AC-2002-16                                1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Maestros de Puerto Rico, por sí y en representación de sus socios<br>    Demandantes-Apelantes<br><br>                    v.<br><br>Comisión de Relaciones del Trabajo del Servicio Público de Puerto Rico<br>    Demandados-Apelados<br><br>Federación de Maestros de Puerto Rico<br>    Interventora<br><br>María del C. Pastrana, et al.<br>    Demandantes-Apelantes<br><br>                    v.<br><br>Departamento de Educación, et al.<br>    Demandados-Apelados | 2003 TSPR 47<br><br>158 DPR \_\_\_\_ |

Número del Caso: AC-2002-16

Fecha: 31 de marzo de 2003

Tribunal de Circuito de Apelaciones:
                Circuito Regional I

Juez Ponente:
                Hon. Antonio J. Negroni Cintrón

Abogado de la Parte Demandantes-Apelantes:
                Lcdo. Rafael A. Nadal Arcelay

Abogados de la Parte Interventora:
                Lcdo. Ángel Raúl Pérez Muñiz
                Lcdo. Raúl Santiago Meléndez

Abogado de la Parte Demandados-Apelados:
                Lcdo. Raymond E. Morales

Oficina del Procurador General:
                Lcdo. Guillermo A. Mangual Amador
                Procurador General Auxiliar

Materia: Inconstitucionalidad de Ley, Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Maestros
de Puerto Rico, por sí y
en representación de sus
socios
        Demandantes-Apelantes

            v.                          AC-2002-16

Comisión de Relaciones del
Trabajo del Servicio
Público de Puerto Rico
        Demandados-Apelados


Federación de Maestros de
Puerto Rico
        Interventora

María del C. Pastrana,
et al.
        Demandantes-Apelantes


            v.

Departamento de Educación,
et al.
        Demandados-Apelados


Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


 San Juan, Puerto Rico, a 31 de marzo de 2003.


        La controversia del recurso de autos requiere dilucidar si una

Resolución emitida por la "Comisión de Relaciones de Trabajo del

Servicio Público de Puerto Rico" (en adelante, "la Comisión"),

mediante la cual se estableció un término de quince (15) días para

que los empleados de una agencia manifiesten su opción de no

afiliarse a la organización sindical que resulte electa como

representante exclusivo de una unidad apropiada, es válida en

derecho.

        En el caso particular ante nos, la Asociación de Maestros de

Puerto Rico (en adelante, "la Asociación") nos solicita que

revoquemos una sentencia del Tribunal de Circuito de Apelaciones la

cual confirmó la denegatoria emitida por el Tribunal de Primera Instancia a una solicitud de sentencia declaratoria para que se declarara ilegal el término antes reseñado, por haberse establecido el mismo en una resolución sin que se cumpliese con el procedimiento de adopción de reglamentos dispuesto por la Ley de Procedimiento Administrativo Uniforme (en adelante, "LPAU"). Por entender que en el caso de autos era indispensable observar el procedimiento establecido en la LPAU, revocamos.

I

El 13 de enero de 1999, la Comisión emitió una Resolución mediante la cual dispuso que los empleados gubernamentales que no interesaran afiliarse a la organización sindical que resultara vencedora en las elecciones de cada unidad apropiada del lugar en que laboran, tendrían quince (15) días para así manifestarlo. Según expone la Resolución, el término de quince (15) días comenzaría a transcurrir al día siguiente de publicarse la notificación de la Comisión certificando como representante exclusivo a la organización sindical seleccionada por los empleados.

En respuesta a dicha acción, la Asociación de Maestros radicó una Solicitud de Sentencia Declaratoria contra la Comisión mediante la cual solicitó se declarase ilegal y ultra vires la gestión de dicho organismo de establecer, mediante Resolución, un término para un empleado expresar o notificar su interés de no afiliarse al representante exclusivo que fuere electo en una unidad apropiada.[1] La Asociación de Maestros alegó, en esencia, que dicha promulgación no sólo es ultra vires, sino que el término dispuesto conflige con lo establecido en la Sección 4.2 de la Ley Núm. 45 de 25 de febrero de

---

[1] Dicha demanda contiene además alegaciones de índole constitucional, específicamente con relación a varios artículos de la Ley Núm. 45. Sin embargo, en múltiples ocasiones hemos reiterado que no juzgaremos la constitucionalidad de ley alguna, a menos que ello fuese imprescindible para resolver el recurso ante nuestra consideración. Así pues, y debido a que es posible disponer de este recurso sin incursionarnos en alegaciones constitucionales, procedemos a así hacerlo. Véase, Mari Bras v. Alcalde 100 D.P.R. 506 (1972).

1998, según enmendada, 3 L.P.R.A. §1451 *et seq.*[2] (en adelante, "Ley Núm. 45"), la cual no dispone término alguno para dicha notificación.

Posteriormente, la profesora María del C. Pastrana y otros, radicaron una acción separada sobre Sentencia Declaratoria, Pleito de Clase, e Injunction Permanente. En la misma, los demandantes solicitaron que se declarasen ilegales los descuentos efectuados automáticamente por el Departamento de Educación por concepto de cuotas de servicio a favor del representante exclusivo, debido a que no había mediado autorización escrita para los mismos.[3] En esencia, solicitaron que el Departamento de Educación se abstuviese de realizar dichos descuentos, que les devolvieran el dinero retenido en concepto de cuotas, y que les compensaran por los daños que dicha retención ilegal les hubiere ocasionado. Debido a que ambas acciones tratan asuntos relacionados a la Ley Núm. 45 y están íntimamente ligadas, los demandantes solicitaron, y el tribunal accedió, a la consolidación de ambas demandas.[4]

Luego de varios trámites procesales, el Tribunal de Primera Instancia declaró sin lugar las acciones incoadas y determinó, entre otras cosas, que la Resolución en cuestión constituía una enmienda al Reglamento Núm. 1 de la Comisión; que el término dispuesto era uno apropiado ya que la demora de los empleados en expresarse sobre la exclusión afecta el procedimiento de la representación exclusiva y la negociación colectiva; y por último, que el empleado que decidió no afiliarse, o aún aquél que se afilió, no tiene

---

[2] Mejor conocida como la "Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico".

[3] En mayo de 1999 se celebró la primera elección, según disponía la Ley de Relaciones del Trabajo, mediante la cual los empleados del Departamento de Educación, en específico los maestros, votaron afirmativamente (con mayoría absoluta) a favor de la sindicalización. Posteriormente, entre octubre y noviembre de 1999, se llevó a cabo la elección del representante exclusivo de los maestros, donde surgió vencedora la Federación de Maestros, quien fue certificada el 29 de noviembre como la representante exclusiva de la Unidad Apropiada Magisterial.

[4] Contra dichos recursos comparecieron la Federación de Maestros de Puerto Rico, El Sindicato de Trabajadores, y la Unión de Personal Administrativo, Secretarial y de Oficina, como interventores.

impedimento legal alguno que le obstaculice pertenecer a otros gremios como lo sería la Asociación de Maestros.

Inconformes con dicha determinación, la Asociación de Maestros, María del C. Pastrana y otros, (en adelante, "Asociación de Maestros et al") acudieron ante el Tribunal de Circuito de Apelaciones quien, a su vez, confirmó la sentencia apelada.

Cabe mencionar que la sentencia del Tribunal de Circuito de Apelaciones confirmó la determinación del Tribunal de Primera Instancia por entender, en esencia, que los demandantes habían incurrido en incuria sin haber presentado justificación alguna para la demora incurrida. En dicha sentencia el foro apelativo señaló que la Asociación de Maestros et al, tuvieron conocimiento de la Resolución que aquí se impugna en enero de 1999, y que a pesar de ello, y de tener amplia oportunidad para objetar la referida Resolución, mostraron dejadez al esperar casi diez (10) meses para presentar el primer recurso, y más de un (1) año para el segundo.

Dicha determinación, sin embargo, no es correcta en derecho. A pesar de que la Resolución en cuestión fue notificada en enero de 1999, en ese momento aún no existía una controversia real y concreta que diese pie a una acción en nuestros tribunales. Ello, ya que ni siquiera se había llevado a cabo la primera de dos elecciones en la unidad apropiada, mediante la cual los empleados decidirían si en efecto, deseaban o no sindicalizarse.[5] Luego de esa elección, y de decidirse por mayoría que, en efecto, deseaban organizarse, se llevaría a cabo una segunda votación donde los maestros escogerían a una de las organizaciones obreras como su representante exclusivo. Esa segunda elección se llevó a cabo entre el 25 de octubre y el 5 de noviembre de 1999. Por otra parte, no fue hasta el 15 de agosto de 2000 que se realizaron los primeros descuentos por conceptos de cuotas a los aquí demandantes.

---

[5] La disposición de la Ley Núm. 45 que requería dos (2) elecciones separadas para que los empleados de una unidad apropiada pudiesen sindicalizarse, fue posteriormente enmendada.

Así pues, de haberse presentado las demandas para la fecha que el foro apelativo estima se debieron haber presentado, es decir, para enero de 1999, las mismas hubiesen sido desestimadas por falta de madurez.[6]

Es de esta determinación que recurre ante nos la Asociación de Maestros et al alegando, en síntesis, que incidió el Tribunal de Circuito de Apelaciones al confirmar la sentencia del foro de instancia que determinara que la Resolución del 13 de enero de 1999 era válida en derecho.

Según se desprende de los alegatos presentados, la Asociación de Maestros sostiene que la Resolución del 13 de enero es, en efecto, una enmienda al Reglamento Núm. 1 de la Comisión, por lo que era indispensable recurrir a los procedimientos establecidos en el Art. 5, *et seq.,* de la LPAU, 3 L.P.R.A. §2121, *et seq.,* para enmendar, aprobar o derogar reglas y reglamentos. Alegan los peticionarios que, debido a que dichos procedimientos no fueron observados, la Resolución en cuestión, es nula en derecho. Examinado el recurso, le concedimos término a la Comisión para que compareciera y mostrara causa, si la hubiere, por la cual no debiéramos revocar el dictamen del foro apelativo.[7]

En su escrito para mostrar causa, la Comisión alegó que la Resolución en cuestión no constituyó una enmienda al Reglamento Núm. 1 de la Comisión, ante, sino una directriz administrativa o regla interpretativa, para clarificar la política pública de la Ley Núm. 45 en lo referente a la opción de no afiliarse al representante exclusivo. Ello, a tenor con la clara delegación de poder otorgada a

---

[6] Como cuestión de hecho, debemos señalar además que la profesora María del C. Pastrana presentó una notificación a los efectos de que no deseaba estar afiliada a ninguna organización sindical, notificación que fue suscrita un mes antes de que se llevara cabo la votación mediante la cual los maestros decidirían si deseaban sindicalizarse o no, y siete meses antes de la elección del representante exclusivo. Ante tal reclamo, la propia Comisión le indicó a la señora Pastrana que la misma era prematura ya que los empleados de dicha unidad apropiada ni siquiera había llevado a cabo la elección donde se decidiría, en efecto, si los maestros deseaban o no sindicalizarse.

la Comisión mediante la Ley Núm. 45 y el propio Reglamento antes citado.[8] Examinadas las comparecencias de las partes, resolvemos según intimamos.

## II

### A

El 25 de febrero de 1998, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 45 o "Ley de Relaciones del Trabajo". Dicha ley se aprobó con el propósito de conferirle a los empleados públicos que no estén cubiertos por la Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. 62,[9] el derecho a organizarse para negociar sus condiciones de trabajo según los parámetros establecidos por la propia Ley 45. Estos parámetros se circunscriben a tres criterios esenciales, a saber: 1) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente de mejoramiento de las condiciones de trabajo de los empleados públicos; 2) evitar interrupciones en los servicios que prestan las agencias gubernamentales; y, 3) promover la productividad en el servicio público. *Véase,* Exposición de Motivos de la Ley Núm. 45 de 25 de febrero de 1998, 3 L.P.R.A. §1451.

A esos fines, la Ley Núm. 45 le reconoció a los empleados de las agencias centrales tradicionales el derecho a organizarse y afiliarse en organizaciones sindicales de su elección. Así pues, los empleados de las diferentes unidades apropiadas que deseen sindicalizarse escogerán, mediante voto mayoritario, la organización que habrá de representarles ante la agencia correspondiente. La

---

[7] Se le otorgó además un término razonable a las partes interventoras para que sometieran sus respectivas alegaciones.

[8] En la Sección 103-A del Reglamento en cuestión, se establece lo siguiente: "Independientemente de lo establecido en este Reglamento, la comisión podrá establecer cualquier procedimiento que estime apropiado para asegurar un funcionamiento eficaz y adecuado para que se cumpla con las disposiciones de la Ley. En la eventualidad que la Comisión tenga que establecer un procedimiento no establecido en este Reglamento le notificará a las partes con suficiente tiempo las disposiciones de dicho procedimiento. (Énfasis suplido).

[9] Conocida como la "Ley de Relaciones del Trabajo de Puerto Rico".

organización sindical que resulte vencedora y que sea certificada como representante exclusivo de los empleados comprendidos en esa unidad apropiada, tendrá autoridad para negociar con la agencia correspondiente un convenio colectivo en el que se discutan y acuerden, entre otras cosas, asuntos relacionados con salarios, beneficios marginales, términos y condiciones de empleo. 3 L.P.R.A. §1451(j).

No obstante lo antes dicho, la Ley Núm. 45 reconoce el derecho que tienen los empleados que no interesen afiliarse al representante exclusivo, ni ser representados por la organización obrera debidamente certificada, de ser excluidos de la misma. Sin embargo, los empleados no afiliados se regirán por las disposiciones del convenio colectivo en lo que respecta al procedimiento de quejas, agravios y arbitraje, y le serán aplicables las disposiciones relacionadas con salarios, beneficios marginales y los términos y condiciones de empleo. 3 L.P.R.A. §1454(a), según enmendada. Como cuestión de hecho, cabe mencionar que para la fecha de la controversia de marras, la sección 4.2 de la Ley Núm. 45 no disponía un término para que los empleados interesados notificaran su deseo de no afiliarse.

A fin de hacer cumplir las disposiciones de la Ley Núm. 45, la propia ley dispuso para la creación de un organismo administrativo denominado "Comisión de Relaciones del Trabajo del Servicio Público", a quien confirió poderes y facultades cuasi-legislativas y cuasi-judiciales, delimitadas en dicha ley. 3 L.P.R.A. §1452(t). Entre las facultades delegadas, se encuentran el deber y la obligación ministerial de:

"interpretar, aplicar y hacer cumplir las disposiciones de esta Ley en todo lo relativo a los procesos de organización, certificación, descertificación de organizaciones sindicales; en los procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos, en los procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que este capítulo le delegue alguna actuación particular. 3 L.P.R.A. §1452(t)(a).

La Ley Núm. 45 también le confirió a la Comisión la autoridad para adoptar la reglamentación necesaria para cumplir con las disposiciones de dicha ley, y de ese modo asegurar un funcionamiento eficaz y adecuado de la misma.

Conforme a la autoridad conferida, y en miras de administrar la Ley Núm. 45, la Comisión aprobó el Reglamento Núm. 1, el cual entró en vigor el 31 de diciembre de 1998. Es menester señalar que dicho Reglamento tampoco disponía término alguno para notificar la opción de no afiliarse a las filas del representante exclusivo. Es decir, para cuando se suscitó la controversia del presente recurso, existía la opción de no afiliarse al representante exclusivo de la unidad apropiada, pero ni la Ley Núm. 45 ni el Reglamento Núm. 1, disponían término alguno para ejercer dicha opción.

Cabe señalar que, en julio de 2000 se enmendó la referida Ley Núm. 45 y se dispuso un término de 30 días para notificar la opción de no-afiliación. Posteriormente, la Comisión aprobó un segundo Reglamento, Reglamento Núm. 6385 de la Comisión, que derogó el Reglamento Núm. 1 de 1998, y en el cual se incorporó el término de treinta (30) días establecido por la Ley Núm. 45, según enmendada. Dichas enmiendas, no obstante, no tornan académico el presente recurso.

Aunque tanto la Ley Núm. 45, según enmendada, y el Reglamento actual de la Comisión disponen un término de treinta (30) días para que un empleado notifique el deseo a no ser ingresado automáticamente en las filas del gremio vencedor, las partes aquí peticionarias siguen estando sujetas a lo dispuesto en la Resolución del 13 de enero de 1999, y a las consecuencias fácticas de dicha determinación. Veamos.

A raíz de dicha Resolución, los peticionarios de este recurso fueron ingresados de manera involuntaria a las filas del representante exclusivo de la cual, cabe mencionar, están impedidos de solicitar exclusión, por lo que siguen sufriendo las

consecuencias de verse afiliados a una organización a la cual no desean pertenecer como resultado de una resolución emitida contraria a derecho.

Además, es por virtud de esa Resolución que a los aquí peticionarios les descuentan de sus salarios unas partidas por concepto de cuotas las cuales serían menores si dichas personas estuviesen fuera de la organización sindical que funge como representante exclusivo de dicha unidad magisterial.[10] Claramente se desprende pues, que a pesar de las enmiendas antes señaladas, los peticionarios del presente recurso siguen estando expuestos a las consecuencias adversas de la Resolución de 13 de enero antes mencionada.

B

Por su parte, la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. § 2101, según enmendada, exige el cumplimiento por parte de las agencias administrativas de determinados requisitos al momento de aprobar, enmendar o derogar una reglamentación. 3 L.P.R.A. §2121. De conformidad con dicha legislación, el concepto *regla* o *reglamento* se define como "cualquier norma o conjunto de normas de una agencia que sea de aplicación general, que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia". 3 L.P.R.A. §2102(l). Así pues, según se desprende de la referida ley, existen diversos tipos de reglas, a saber: 1) reglas procesales; 2) reglas sustantivas o legislativas; y, 3) reglas interpretativas. El procedimiento a seguir para la aprobación, derogación o enmienda de una regla en particular, dependerá esencialmente, de la categoría a

---

[10] Originalmente, la Ley Núm. 45 disponía que las personas que ejercieran su opción de no afiliarse, no pagarían cargos por servicio a la organización obrera que resultara electa. Luego de enmendada, la ley dispuso que a las personas no afiliadas pagarían al representante exclusivo hasta un máximo de cincuenta por ciento (50%) de la cuota regular establecida para los empleados afiliados al representante exclusivo.

la cual la misma pertenezca.[11]

En Municipio de San Juan v. Junta de Calidad Ambiental, res. el 14 de dic. de 2000, 2000 T.S.P.R. 183, advertimos que: "una regla legislativa es aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley". Es una regla que la agencia aprueba para darle contenido sustantivo o detallado, o de algún otro modo complementar la ley. Véase, Agosto Serrano v. Fondo del Seguro del Estado, 132 D.P.R. 866 (1993). Es decir, una regla legislativa es aquella que afecta derechos y obligaciones de las partes o individuos.

Reiteradamente hemos establecido que esta categoría de reglamentación tiene fuerza de ley, y obliga también a las agencias quienes no tienen discreción para repudiarla. Por la importancia que reviste este tipo de regla o reglamento y el efecto que el mismo puede acarrear para el público en general, la promulgación de una regla legislativa requiere el cumplimiento del procedimiento de reglamentación según establecido en la LPAU.

Este procedimiento, en esencia, requiere notificar a la ciudadanía la intención de adoptar o modificar una regla o reglamento. La notificación se efectuará mediante la publicación de un resumen de la propuesta regla o reglamento en un diario de circulación general, y la concesión de un plazo razonable para que los ciudadanos puedan someter comentarios por escrito. Una vez la agencia adopta la Regla o Reglamento, es requisito indispensable

---

[11] **La propia ley reconoce excepciones a la definición de regla o reglamento, para los cuales las agencias no tienen que cumplir con los requisitos formales para adoptar un reglamento. Entre otras, quedan excluidas del procedimiento de la LPAU 1) las reglas relacionadas con la administración interna de la agencia que no afectan directa o sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general; y, 2) declaraciones interpretativas y declaraciones de política pública, que son meramente explicativas y no tienen ningún efecto legal. 3 L.P.R.A. §2102(1)(1)(2). Un reconocido estudioso del derecho administrativo ha expresado, que estas excepciones tienen el propósito de mantener la flexibilidad de los procedimientos ante el foro administrativo, cuando no se afectan los derechos de las partes. Véase, B Schwartz Administrative Law, 3ra ed., Boston, Little Brown, 1991 § 4.12, Pág. 197.**

presentarlo ante el Departamento de Estado, el cual posee la facultad de rechazarlo, enmendarlo o aprobarlo sin más. Si el reglamento es aprobado por el Secretario de Estado, entonces debe publicarse en un diario una síntesis de éste. Dicho reglamento comenzará a regir, de ordinario, pasados treinta (30) días de su presentación. 3 L.P.R.A. §2128.

Una regla interpretativa, en cambio, es una expresión de la agencia que ofrece una aclaración de la ley que administra, o de sus reglas y reglamentos.[12] Conforme a lo antes expuesto, en Municipio de San Juan v. Junta de Calidad Ambiental, *ante*, señalamos que  dichas reglas son creadas cuando las agencias administrativas aprueban directrices u otras reglamentaciones informales con el propósito de darle uniformidad a sus propios procesos, pautar la discreción administrativa u otros fines internos. En dicho caso sostuvimos además que, si la nueva regla es irreconciliable con una regla legislativa existente, entonces la nueva regla es propiamente una enmienda a la primera, y consecuentemente, debe ser considerada como una regla legislativa cuya aprobación debe observar el proceso de reglamentación antes descrito.

Las reglas interpretativas pueden ser de gran valor, ya que permiten a las agencias pautar la discreción administrativa de una manera más informal, y facilitan que las agencias le informen a la ciudadanía el contenido preciso de sus derechos y deberes bajo la ley administrada por esa agencia o comisión. Véase, Asociación de Farmacias de la Comunidad v. Departamento de Salud, res el 5 de febrero de 2002, 2002 T.S.P.R. 13. Estas reglas, a diferencia de las reglas legislativas, no tienen que ser aprobadas mediante el procedimiento de reglamentación de la LPAU.

Por último, y debido a la pertinencia que tienen para el caso de autos, debemos mencionar lo resuelto en algunas jurisdicciones

---

[12]Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum 2001,Pág. 125.

norteamericanas en cuanto al aspecto legal de las susodichas reglas interpretativas.[13] En *Gilbert v. State Department of Fish and Game*, 803 P.2d 391, 396-397 (Alaska 1990), el Tribunal Supremo de Alaska invalidó una regla por considerar que la misma no caía bajo la categoría de regla interpretativa debido a que la regla hacía más específica la ley ejecutada o administrada, y afectaba los derechos de la ciudadanía. Ese caso dispuso además que la agencia no podía invocar dicha regla hasta tanto se llevaran a cabo los procedimientos de reglamentación.

De igual forma, en *New England Whitewater Center, Inc. v. Department of Inland Fisheries and Wildlife*, 550 A.2d 56, 61-64 (Me., 1988), el Tribunal Supremo de Maine decretó que una regla no puede ser interpretativa si la misma hace más específica la ley que administra la agencia.

En resumidas cuentas, en el derecho administrativo se distingue entre reglas interpretativas y reglas legislativas, según el efecto que éstas tienen con respecto a los derechos y obligaciones de las partes. Las reglas legislativas modifican y alteran los derechos de los individuos, mientras que las interpretativas clarifican e interpretan las obligaciones y deberes fijados por el estatuto orgánico.

A la luz de esta normativa debemos examinar si la Resolución emitida por la Comisión constituía, como alega dicha Comisión, una regla interpretativa, o si por el contrario, la misma constituye una enmienda con carácter legislativo, por lo que la misma debió haber cumplido con los procedimientos establecidos en la LPAU.

III

Como mencionáramos anteriormente, al momento de concretarse la

---

[13] Hay que recordar que la Ley Núm. 170 de 12 de agosto de 1988, (LPAU) fue adoptada siguiendo el modelo del "Administrative Procedure Act" (APA), 5 U.S.C. § 551 et sec, y del Model State Administrative Procedure Act (1981)" redactado por el National Conference of Commisioners on Uniform State Laws, por lo que las decisiones estatales en circunstancias similares tienen valor persuasivo a la hora de interpretar nuestra Ley de Procedimientos Administrativos Uniformes.

controversia de autos, ni la Ley Núm. 45 ni el Reglamento Núm. 1 de la Comisión, disponían de término alguno para que los empleados que no desearan afiliarse, expresaran y notificaran dicha decisión. Dichos cuerpos meramente disponían que los empleados que así lo deseasen tenían la opción de ser excluidos de las filas del representante exclusivo.

El 13 de enero de 1999, la Comisión emitió y publicó una Resolución mediante la cual dispuso que los empleados que no interesaran afiliarse al representante exclusivo, según fuere seleccionado en unas elecciones posteriores, tendría quince (15) días para notificar su decisión. Como cuestión de hecho, dicha Resolución fijaba un término que hacía más específica la ley administrada. Es decir, el término propuesto afectaba y alteraba los derechos y obligaciones de las partes en cuestión, ya que establecía un término que en ley no existía.

De los hechos de autos se desprende que la resolución en cuestión no pretendía meramente _clarificar_ o _darle uniformidad a los procedimientos_ de dicha Comisión, sino que dicha resolución pretendía establecer una obligación sustantiva con fuerza de ley. Tan es así, que la omisión de notificar el deseo de ser excluido de las filas del representante exclusivo tenía como consecuencia el ser automáticamente ingresado a dicho gremio, y la consecuente deducción mensual de cuotas por motivo de cargos por servicio de dicho representante exclusivo.

Resulta meridianamente claro pues, que la Resolución del 13 de enero de 1999 es, en efecto, una regla legislativa y no, como alega la Comisión, una regla interpretativa. Como tal, y siguiendo lo establecido en el Art. 5 de la LPAU, 3 L.P.R.A. §2121, la Comisión estaba obligada a observar los procedimientos establecidos en dicha ley para enmendar o alterar alguna sección de su Reglamento.

Tan evidente es que nos encontramos ante una regla legislativa que, durante el transcurso de este caso, la Comisión aprobó un nuevo reglamento, (derogando así el Reglamento Núm. 1), mediante el cual

estableció un  término de treinta(30) días para notificar el deseo de no afiliarse al representante exclusivo. Dicho reglamento, por su puesto, fue aprobado siguiendo el procedimiento establecido en la LPAU.[14]

La experiencia ha demostrado una inclinación por parte de las agencias, de promulgar boletines, anuncios, guías, memorandos, resoluciones y otros documentos interpretativos, que en su operación y efecto legal constituyen reglas legislativas, para de esa forma esquivar el proceso de reglamentación establecido por ley. No podemos avalar que las agencias se adjudiquen de esa manera una licencia que les provea una discreción casi ilimitada en sus facultades reglamentarias. Véase, Asociación de Farmacias de la Comunidad v. Departamento de Salud, ante.

Habiendo decretado que la Resolución del 13 de enero de 1999 constituía, en efecto, una regla legislativa, y que la misma no fue aprobada conforme a los procedimientos de la LPAU, es pues forzoso concluir que dicha Resolución es nula en derecho. Véase la Sección 2.7 de la LPAU, 3 L.P.R.A. §2127. De igual forma carecen de validez legal tanto el término de quince (15) días establecido en dicha resolución para notificar la opción de no afiliarse al representante exclusivo, como las consecuencias adversas que dicho término pudo haber tenido para las partes de este recurso.

Así pues, y conforme a lo antes dispuesto, declaramos improcedentes e ilegales los descuentos por concepto de cuotas efectuados a los maestros aquí peticionarios, que no notificaron su opción a no afiliarse dentro de los quince (15) días establecidos en la mencionada resolución, y ordenamos el cese inmediato de dichos descuentos. Procede pues la devolución de los dineros retenidos a las partes aquí peticionarias por concepto de cuotas, y el inicio de un nuevo término de treinta (30) días, según disponen la Ley 45, y

---

[14] Dicho reglamento fue aprobado varios meses luego de que la propia Ley Núm. 45 fuera enmendada, y que la misma adoptara el término de (30) días para notificar la decisión de no afiliarse al representante exclusivo.

el nuevo reglamento de la Comisión, para que las partes que así lo interesen tengan oportunidad de notificar su intención de ser excluidos de las filas del representante exclusivo.

Por los fundamentos antes esbozados, procede revocar el dictamen del Tribunal Apelativo, y se devuelve el recurso al Tribunal de Primera Instancia para que se prosiga de forma consistente con lo aquí resuelto y se determine el monto de las cuotas ilegalmente descontadas.

Se dictará la Sentencia correspondiente.


                    FEDERICO HERNÁNDEZ DENTON
                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Maestros
de Puerto Rico, por sí y
en representación de sus
socios
    Demandantes-Apelantes

       v.                     AC-2002-16

Comisión de Relaciones del
Trabajo del Servicio
Público de Puerto Rico
    Demandados-Apelados

Federación de Maestros de
Puerto Rico
    Interventora

María del C. Pastrana,
et al.
    Demandantes-Apelantes

       v.

Departamento de Educación,
et al.
    Demandados-Apelados


SENTENCIA


San Juan, Puerto Rico, a 31 de marzo de 2003.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se revoca el dictamen del Tribunal de Circuito de Apelaciones y se devuelve el recurso al Tribunal de Primera Instancia para que se prosiga de forma consistente con lo aquí resuelto y se determine el monto de las cuotas ilegalmente descontadas.

    Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rivera Pérez no intervino.


                  Patricia Otón Olivieri
              Secretaria del Tribunal Supremo