El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
Los recursos presentados nos permiten examinar si el Tribunal de Apelaciones posee jurisdicción para revisar la determinación del Departamento de Recursos Naturales y Ambientales (D.R.N.A.), mediante la cual designa e incor-pora una nueva especie como una en peligro crítico de ex-tinción y su hábitat como uno natural crítico esencial en el Reglamento para Regir las Especies Vulnerables y en Peli-gro de Extinción en el Estado Libre Asociado de Puerto Rico, Reglamento Núm. 6766 del Departamento de Estado, 11 de febrero de 2004 (Reglamento Núm. 6766).
Concluimos que la actuación del D.R.N.A. constituye una enmienda al reglamento aprobado. Por lo tanto, el D.R.N.A. está obligado a seguir el proceso para reglamen-tar contenido en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. see. 2101 et seq.) (L.P.A.U.).
I
Los hechos relevantes ante nuestra consideración tie-nen su génesis cuando el Secretario del D.R.N.A. anunció su intención de designar al coquí llanero (Eleutherodac- *688 tylus Juanariveroi) como especie en peligro crítico de extinción y su hábitat asociado como crítico esencial.([1]) Para ello anunció, mediante un aviso público, la fecha cuando cele-braría la vista pública obligatoria.
El municipio de Toa Baja (Municipio) y Sabana Seca Land Management, LLC (Land Management) comparecie-ron a la vista pública. Ambos se opusieron a la designación del hábitat propuesto para el coquí llanero. Posterior-mente, sometieron por escrito sus comentarios finales ante el DMA
El panel técnico legal que presidió los procedimientos recomendó la designación del coquí llanero como especie en peligro crítico de extinción y concedió un término adicional para evaluar los argumentos contra la designación del hábitat como crítico esencial. El Secretario del D.R.N.A. acogió y aprobó el aludido informe. De acuerdo con ello, el 9 de noviembre de 2007, el D.R.N.A. publicó en un periódico de circulación general un aviso para informar la designación del coquí llanero como especie en peligro crítico de extinción.
Posteriormente, el Panel Técnico Legal de D.R.N.A. sus-cribió el 15 de noviembre de 2007 un segundo informe so-bre la designación del hábitat del coquí llanero como crítico esencial. El Secretario de D.R.N.A. aceptó el informe.![2]) En conformidad, publicó un aviso público el 19 de noviembre de 2007 en dos periódicos para notificar que se había de-signado el hábitat del coquí llanero como crítico esencial.([3]) Sin embargo, no presentó la reglamentación ante el Depar- *689 tamento de Estado ni estableció fecha de vigencia para ésta.
En desacuerdo con la calificación del hábitat crítico esencial, Land Management y el Municipio acudieron ante el Tribunal de Apelaciones mediante sendos recursos de revisión. En síntesis, ambos adujeron que la actuación del D.R.N.A. constituía una enmienda al reglamento y que in-cumplió con los requisitos legales para que ésta procediera. Los recursos fueron consolidados.
Por su parte, el D.R.N.A. cuestionó la jurisdicción del foro apelativo intermedio. Planteó que el hábitat definido no constituía una enmienda al reglamento sino una deter-minación emitida por la agencia a base del reglamento pre-viamente aprobado, por lo que ésta no era revisable por el foro intermedio.
El 30 de junio de 2008 el Tribunal de Apelaciones emitió su sentencia mediante la cual concluyó que carecía de ju-risdicción para atender el asunto. Resolvió que la designa-ción del hábitat crítico esencial no constituye una en-mienda al reglamento sino una orden que lleva a efecto determinaciones fundamentadas a base del Reglamento Núm. 6766. Indicó que el D.R.N.A. no modificó o varió la redacción del reglamento.
Inconformes, el Municipio y Land Management acudie-ron con sendos recursos de certiorari ante este Tribunal. En lo pertinente, ambos peticionarios argumentaron que erró el Tribunal de Apelaciones al decidir que carecía de jurisdicción para atender las revisiones presentadas y al concluir que las acciones del D.R.N.A. no constituyen una acción reglamentaria sujeta a revisión.
El 27 de febrero de 2009 expedimos los recursos presen-tados por el Municipio y Land Management y el 14 de agosto de 2009, los consolidamos. Estamos en posición de resolver.
*690 II
A. Para atender la polémica suscitada es necesario en-marcar la discusión en los estatutos sobre la protección a la vida silvestre y su hábitat crítico para determinar si en efecto la actuación del D.R.N.A. constituye un ejercicio su-jeto a la revisión del Tribunal de Apelaciones. Veamos.
La Ley Orgánica del Departamento de Recursos Naturales y Ambientales, Ley Núm. 23 de 20 de junio de 1972, según enmendada, 3 L.P.R.A. see. 151 et seq., creó al D.R.N.A. con el propósito de implantar la política pública de arraigo constitucional sobre la más eficaz conservación, desarrollo y aprovechamiento de los recursos naturales. Véase Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1; 3 L.P.R.A. see. 153.
Entre las funciones y los deberes del Secretario del D.R.N.A. se encuentra el aprobar, enmendar y derogar reglamentos para llevar a cabo los objetivos que le fueron encomendados. Entre éstos, la Ley Núm. 31 de 29 de septiembre de 1983 encomendó al Secretario del D.R.N.A. el deber de tomar todas las medidas necesarias para la conservación, la preservación, la distribución, el manejo, la introducción, la propagación y la restauración de especies de vida silvestre, animales, plantas —tanto terrestres como acuáticas— amenazadas o en peligro de extinción en Puerto Rico. 3 L.P.R.A. sec. 155(i) y (Z). De igual forma, la Ley Núm. 31, supra, requirió al Secretario del D.R.N.A. la celebración de vistas públicas que permitieran a la ciudadanía participar en el proceso de designar las especies que han de protegerse. Ello con el fin de “garantizar la participación pública en el proceso de reglamentación de la designación de las especies que están amenazadas o en peligro de extinción” para disponer de “amplia información para tomar las medidas más provechosas de conservación y ma- *691 nejo de estas especies”. (Énfasis nuestro). 1983 Leyes de Puerto Rico 458.([4])
La política encaminada a la conservación de la vida silvestre y en particular del hábitat natural de esas especies conllevó la aprobación de la Nueva Ley de Vida Silvestre de Puerto Rico, Ley Núm. 241-1999, según enmendada, 12 L.P.R.A. see. 107 et seq. (Ley Núm. 241).([5]) El fin de ese estatuto consistió en actualizar y renfocar los principios contenidos en la protección de vida silvestre y su hábitat en concordancia con la información científica recopilada, las necesidades y los privilegios de los ciudadanos para el disfrute de actividades relacionadas con los recursos de vida silvestre y su medio ambiente. 12 L.P.R.A. see. 107a.
La Ley Núm. 241, supra, estableció que el procedimiento para atender la petición de cualquier organización o entidad pública para promover la conservación de una especie como vulnerable o en peligro de extinción, o de su hábitat natural crítico se llevaría a cabo conforme a las disposiciones contenidas en la L.P.A.U. 12 L.P.R.A. see. 107a. A su vez, el estatuto facultó al Secretario del D.R.N.A. para promulgar reglamentos relativos a la designación de las especies que se consideren vulnerables o en peligro de extinción y tomar las medidas necesarias para protegerlas. 12 L.P.R.A. sec. 107g(i).
Según la autoridad conferida por la Ley Núm. 23, supra, la Ley Núm. 241, supra, y de las disposiciones contenidas en la L.P.A.U., el D.R.N.A. adoptó el Reglamento Núm. 6766 con el objetivo de: (1) identificar, conservar y preservar las especies vulnerables y en peligro de extin- *692 ción; (2) propiciar la propagación y supervivencia de espe-cies vulnerables o en peligro de extinción; (3) identificar y promover la conservación de los hábitats naturales críticos y los esenciales; (4) reglamentar la importación y exporta-ción de especies vulnerables o en peligro de extinción; (5) adoptar criterios de designación utilizados por la comuni-dad científica internacional para especies, cuya tendencia poblacional podría llegar a estar en peligro crítico e incluso extinguirse en un periodo de tiempo muy breve. Sec. 1.03 del Reglamento Núm. 6766, supra, pág. 2. Con estos fines, se establecieron los criterios científicos y socioeconómicos que se han de considerar para cumplir con los propósitos encomendados por la Ley Núm. 241, supra. Además, el re-glamento prohíbe causar o propiciar la creación de un daño real o potencial a especies vulnerables o en peligro de ex-tinción e impide modificaciones a un hábitat natural crítico esencial designado sin contar con un plan de mitigación aprobado. Secs. 2.01-2.02 del Reglamento Núm. 6766, supra, págs. 2-3.
En lo que concierne al procedimiento para la designa-ción de una especie como vulnerable o en peligro de extin-ción y de su hábitat, el Reglamento Núm. 6766 requirió para cualquier designación de una especie vulnerable o en peligro de extinción la publicación de un aviso en dos pe-riódicos de mayor circulación para permitir al público co-nocer la designación que el D.R.N.A. propone realizar. See. 2.07 del Reglamento Núm. 6766, supra, pág. 7. Al mismo tiempo, garantiza la participación ciudadana durante la designación o los cambios en las especies vulnerables o en peligro de extinción y de su hábitat crítico al requerir la notificación y celebración de vistas públicas. Sec. 2.08 del Reglamento Núm. 6766, supra, pág. 12. Además, el regla-mento acogió lo dispuesto en la Ley Núm. 241, supra, en cuanto a que las solicitudes de calificación estarían sujetas al procedimiento dispuesto por la L.RA.U. Sec. 3.03 del *693 Reglamento Núm. 6766, supra, pág. 16. Un examen de la ley orgánica que crea el D.R.N.A. y de la Nueva Ley de Vida Silvestre revela que no eximen expresamente al D.R.N.A. de cumplir con el proceso de L.RA.U. al momento de designar e incluir el Reglamento Núm. 6766 una especie en peligro de extinción y su hábitat. Tampoco la L.P.A.U. excluye al D.R.N.A. de sus disposiciones. 3 L.P.R.A. see. 2101. Ello es cónsono con el propósito para el cual fue creada la L.P.A.U. de fijar un cuerpo de reglas mínimas que proveyeran uniformidad al proceso decisorio de la ad-ministración pública. Véase Pagán Ramos v. F.S.E., 129 D.P.R. 888, 897 (1992). Es por ello que el Reglamento Núm. 6766 establece los criterios para hacer las determinaciones sobre las designaciones para proteger las especies en peli-gro de extinción. Estos deben ser cumplidos a cabalidad independiente de quien solicite o promueva la designación pretendida.
Los nombres de las especies vulnerables o en peligro de extinción que el D.R.N.A. determine formarán parte del Apéndice 1 del Reglamento Núm. 6766, supra, págs. 25-59, de acuerdo con su Sec. 3.05. Asimismo, el hábitat crítico definido para las especies vulnerables o en peligro de ex-tinción está contenido en el Apéndice 2, supra, pág. 60. Véase Sec. 4.06 del Reglamento Núm. 6766, supra, pág. 18. La importancia de estos apéndices consiste en que el reglamento, la Ley Núm. 2, supra, y la Ley Núm. 241, supra, imponen obligaciones a las personas y penalidades que pueden incluir hasta pena de cárcel por violaciones a éstas. Véanse: Art. 8 de la Ley Núm. 70 (12 L.RR.A. ant. see. 88); Art. 22 de la Ley Núm. 241 (12 L.P.R.A. sec. 107t); Art. 6 del Reglamento Núm. 6766, supra, pág. 23.([6])
*694 B. Como examinamos, la Ley Núm. 241, supra, y el Reglamento Núm. 6766 establecieron que el procedimiento para la designación de las especies vulnerables y en peligro de extinción o de su hábitat natural crítico debe tramitarse conforme la L.RA.U. Este estatuto dispuso las características y requisitos que las agencias administrativas deben cumplir durante los procesos de adjudicación y reglamentación que llevan a cabo. Centro Unido Detallistas v. Com. Serv. Púb., 174 D.P.R. 174, 182 (2004); J.P. v. Frente Unido I,165 D.P.R. 445, 461 (2005). Los procesos de adjudicación están definidos como aquellos pronunciamientos mediante los cuales una agencia determina los derechos, las obligaciones o los privilegios que le corresponden a una parte. 3 L.P.R.A. sec. 2102(b). Mientras, la reglamentación es el procedimiento seguido por la agencia para formular, adoptar, enmendar o derogar una regla o un reglamento. 3 L.P.R.A. sec. 2102(m).
En lo que nos compete, la L.P.A.U. exige el cumplimiento por parte de las agencias administrativas de determinados requisitos al momento de reglamentar; al aprobar, enmendar o derogar una regla o un reglamento. 3 L.P.R.A. sees. 2121-2141. Para que la reglamentación sea válida deben cumplirse cuatro requisitos básicos: (1) notificar al público la reglamentación que ha de aprobarse; (2) proveer oportunidad para la participación ciudadana, incluyendo vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente, y (4) publicar la reglamentación aprobada. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 690-691 (2000). Véanse, además: Tosado v. A.E.E., 165 D.P.R. 377, 389 (2005); Asociación Maestros v. Comisión, 159 D.P.R. 81, 93 (2003); Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002); Secs. 2.1, 2.2, 2.3, 2.8, 2.11 de L.P.A.U., 3 L.P.R.A. 2121-2123, 2128 y 2131. *695 Todos éstos constituyen requisitos imprescindibles y de in-eludible cumplimiento. Centro Unido Detallistas v. Com. Serv. Púb., supra, pág. 184.
El incumplimiento con los requisitos establecidos por la L.P.A.U. permite a una persona impugnar de su faz una regla o un reglamento aprobado por una agencia adminis-trativa en el término de treinta días siguientes a la fecha de la vigencia de ésta con un recurso que ha de ser presen-tado ante el Tribunal de Apelaciones. 3 L.P.R.A. see. 2127.
El trámite de reglamentación establecido en la L.P.A.U. no aplica a toda regulación que se formule por las agencias administrativas. Tosado v. A.E.E., supra, pág. 389. La Sec. 1.3(Z) del estatuto define lo que constituye una regla o un reglamento y, a su vez, identifica aquellas acciones que no se considerarán como tal al disponer como sigue:
... cualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la polí-tica pública o la ley, o que regule los requisitos de los procedi-mientos o prácticas de una agencia. El término incluye la en-mienda, revocación o suspensión de una regla existente. Quedan excluidos de esta definición:
(1) Reglas relacionadas con la administración interna de las agencias que no afectan directa y sustancialmente los dere-chos o los procedimientos o prácticas disponibles para el pú-blico en general.
(2) Formas e instrucciones, declaraciones interpretativas y declaraciones de política general, que son meramente explica-tivas y no tienen ningún efecto legal.
(3) Decretos mandatorios aprobados por la Junta de Salario Mínimo.
(4) Ordenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emi-tan o puedan emitir en el futuro por otras agencias, y que meramente realizan una determinación de uno o varios pará-metros de reglamentación con base a un reglamento previa-mente aprobado y que contiene las normas para su expedición. 3 L.P.R.A. sec. 2102(Z).
De acuerdo con ello, la L.P.A.U. distingue entre reglas *696 legislativas y no legislativas. Tosado v. A.E.E., supra, pág. 389. Dependiendo del tipo de regla es el procedimiento que ha de seguir para su aprobación, derogación o enmienda. Asociación Maestros v. Comisión, supra, pág. 92.
Los incisos (1) y (2) de la Sec. 1.3(Z) de la L.P.A.U., supra, son las conocidas reglas no legislativas que agrupan las normas procesales e interpretativas. Estas, a pesar de vincular administrativamente, responden a la aprobación de directrices o reglamentaciones informales cuyo objetivo es uniformar los procesos, pautar la discreción administrativa u otros fines internos. Mun. de San Juan v. J.C.A., supra, págs. 691-692; Tosado v. A.E.E., supra, págs. 390-392; Asociación Maestros v. Comisión, supra, pág. 93; D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, págs. 109-110 y 125-130. El denominador común de éstas consiste en que las reglas no legislativas constituyen pronunciamientos administrativos que no alteran los derechos ni las obligaciones de los individuos. Véase González v. E.L.A., 167 D.P.R. 400, 411 (2006), citando a R.J. Pierce, Distinguishing Legislative Rules from Interpretative Rules, 52 Admin. L. Rev. 547 (2000), y a H. Meléndez Juarbe, Derecho administrativo, 73 Rev. Jur. U.P.R. 509, 510 (2004).
A su vez, la L.P.A.U. dispensa del procedimiento formal de reglamentación las órdenes que fijen precios del Departamento de Asuntos del Consumidor (D.A.Co.) y otros decretos u órdenes similares basados en un reglamento aprobado. Este inciso no formó parte del proyecto original presentado al promulgar la legislación. Este fue recomendado por la Comisión de lo Jurídico Civil de la Cámara de Representantes en su Informe del Sustitutivo al P. del S. 350, de 3 de junio de 1988, lOma. Asamblea Legislativa, 4ta Sesión Ordinaria, al endosar el proyecto que culminó con la aprobación de la L.P.A.U.
La ley orgánica que crea a D.A.Co., Ley Núm. 5 de 23 de *697 abril de 1973 (3 L.P.R.A. see. 341 et seq.), establece especí-ficamente que las órdenes de precio emitidas a base de los reglamentos que contienen criterios para esa fijación, por regla general, entran en vigor en la misma fecha de su publicación en un periódico de mayor circulación en Puerto Rico y dispensa de la celebración de vistas públicas y de su presentación ante el Departamento de Estado para su vigencia. 3 L.P.R.A. sec. 341g. De esta forma, al aprobar la L.P.A.U. se integró el lenguaje contenido en la ley orgánica de D.A.Co. y circunstancias similares que pudieran existir en otras agencias.
Por otra parte, las denominadas reglas legislativas crean o afectan derechos, imponen obligaciones y establecen un patrón de conducta que tiene fuerza de ley. Asociación Maestros v. Comisión, supra, pág. 93; Mun. de San Juan v. J.C.A., supra, pág. 692. De esta forma, cualquier regla que tenga un efecto obligatorio significativo en los derechos sustantivos de un individuo constituye una regla legislativa. Fernández Quiñones, op. cit., pág. 123. Es por ello que se expresa lo siguiente:
Debe señalarse que el principio cardinal que regula las con-secuencias legales de la reglamentación es que tiene “fuerza y efecto de ley”. Equivale ello a decir que tiene la misma fuerza que un estatuto y obliga también a las agencias que no tienen discreción para repudiarla. Su alcance prescribe patrones de conducta a los cuales se tienen que conformar los afectados y cubiertos por ella. Puede el infractor de esa regulación estar sujeto de consecuencias penales. En términos prácticos un ciu-dadano puede enfrentarse a tantas dificultades por violar una regla sustantiva o legislativa de una agencia como por violar un estatuto aprobado por la Asamblea Legislativa. íd., págs. 124-125.
Lo expresado revela que las reglas legislativas proveen a las partes afectadas una notificación previa sobre qué conducta es permisible e impermisible. Por la importancia que estas revisten, y el efecto que pueden acarrear para el público en general, su promulgación requiere *698 el cumplimiento del procedimiento de reglamentación esta-blecido por la L.P.A.U. Asociación Maestros v. Comisión, supra. De esta forma, se promueve un sistema más justo en el cual las partes afectadas estén bien informadas sobre las exigencias de la ley y puedan cumplir con ellas de la manera más cabal, efectiva y eficiente. Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105, 131-132 (2002).
III
En los recursos ante nuestra consideración, el Munici-pio y Land Management sostuvieron que la designación del coquí llanero y la delineación territorial determinada como su hábitat natural crítico esencial debe cumplir con el pro-cedimiento dispuesto por la L.P.A.U., por lo que es revisable por el Tribunal de Apelaciones acorde con lo dispuesto en su See. 2.7 (3 L.P.R.A. see. 2127). Argumentaron que esas determinaciones constituyen enmiendas a una regla o un reglamento acorde con la L.P.A.U. Ambos peticionarios expusieron que la ley orgánica del D.R.N.A., la Ley Núm. 241 y el Reglamento Núm. 6766 requieren el cumplimiento con el proceso de reglamentación establecido por la L.P.A.U. Recalcaron que la designación constituye una re-gla legislativa que añade una nueva especie y su hábitat al Reglamento Núm. 6766, cuyo efecto reviste obligaciones directas para la ciudadanía general y le expone a consecuen-cias por su incumplimiento. A su vez, distinguieron el pro-cedimiento llevado por el D.R.N.A. de las órdenes de precio de D.A.Co., por lo que expusieron que la determinación realizada por el D.R.N.A. no está exenta de cumplir con el proceso de reglamentación establecido por la L.P.A.U.
Por el contrario, el D.R.N.A. argumentó que la designa-ción impugnada no resulta en una enmienda a un regla-mento que requiera seguir el proceso de reglamentación establecido por la L.P.A.U. Así, sostuvo que el Tribunal de *699 Apelaciones carecía de jurisdicción para atender los recur-sos presentados ante ese foro. Con el propósito de eximir la designación de la especie en peligro de extinción y su há-bitat natural crítico del proceso contemplado por la L.RA.U. equiparó su actuación a las órdenes de precio emi-tidas por D.A.Co. No nos convence.
Enmarcada la normativa aplicable resalta que la ley or-gánica del D.R.N.A., la Ley Núm. 241 y el Reglamento Núm. 6766 expresamente disponen que la designación de una especie como una vulnerable o en peligro de extinción y de su hábitat debe resolverse conforme dispone la L.P.A.U. Igualmente, la Exposición de Motivos de la Ley Núm. 31, supra, revela que la designación de éstas consti-tuye un proceso de reglamentación. El hecho de que la lista de especies en peligro de extinción obre en el apéndice del Reglamento no puede alterar este análisis.
No dudamos en que la designación realizada por el D.R.N.A. es un ejercicio de reglamentación que crea, afecta e impone derechos significativos a la ciudadanía general con fuerza de ley, por lo que esa acción cuasilegislativa no está exenta del proceso de reglamentación fijado por la L.RA.U. Abona a esa conclusión el hecho de que todos los estatutos examinados exigen al D.R.N.A. un aviso público sobre la propuesta de designación e imponen la oportuni-dad de la participación ciudadana y la celebración de vistas públicas. Igualmente, y como parte del reglamento, este contiene dos apéndices que incluyen los nombres de las especies vulnerables o en peligro de extinción determina-das y su hábitat crítico que notifican formalmente los ejemplares y el ecosistema que ha de protegerse.
Así las cosas, la D.R.N.A., al designar una nueva espe-cie como en peligro de extinción y delimitar su hábitat natural crítico esencial, está vedada de ignorar el mandato legislativo. A poco examinamos las actuaciones realizadas por el D.R.N.A. destaca que éstas constituyen un ejercicio de reglamentación que no está excluido por la Sec. 1.3(Z) *700 del cumplimiento de las disposiciones contenidas en la L.P.A.U. El simple hecho de que la determinación reali-zada por el D.R.N.A. esté basada en el reglamento no es razón para eximirle del cumplimiento de L.P.A.U. Recorde-mos, que una vez aprobado un reglamento la agencia tiene el deber de cumplir con este. Tal ejercicio no se asemeja a las órdenes de precio emitidas por D.A.Co. Mediante éstas, D.A.Co. fija y revisa precios y márgenes de beneficio en los productos que forman parte del reglamento y los cuales la comunidad conoce de antemano. Al hacerlo, prosigue el trámite establecido en su ley orgánica la cual expresa-mente le dispensa de la celebración de vistas públicas y la presentación de éstas ante el Departamento de Estado para su vigencia. Ello es diferente a la designación del co-quí llanero como un animal en peligro de extinción y la de su ambiente cuyo efecto real es añadir al Reglamento Núm. 6766 una nueva especie y delimitar su hábitat a ser protegido. La consecuencia de la calificación obliga a la ciu-dadanía general a no causar o propiciar la creación de un daño real o potencial a ésta. Además, impide modificar el hábitat sin un plan de mitigación aprobado por el D.R.N.A. o poseer, transportar, coger, destruir o exportar la especie. Cualquier violación a ello conlleva penalidades que inclu-yen la imposición de multas que pueden ascender a cin-cuenta mil dólares o cárcel hasta tres años.
A todas luces el ejercicio realizado por el D.R.N.A. no persigue clarificar la reglamentación en cuestión ni dar uniformidad a sus procedimientos. Tampoco es similar a las órdenes de precio emitidas por el D.A.Co. Transciende que la inclusión de la especie constituye una enmienda sus-tantiva al Reglamento Núm. 6766, al incluir la designación de una nueva especie y su hábitat como una protegida por la ley, por lo que evidentemente estamos ante la promulga-ción de una regla legislativa que debió aprobarse mediante el procedimiento establecido por la L.RA.U. para la apro-bación de reglamentación administrativa.
*701 Ante tal panorama, y conforme dispone la See. 2.8 de la L.P.A.U., 3 L.P.R.A. see. 2128, todo reglamento aprobado por cualquier agencia debe ser presentado ante el Depar-tamento de Estado. Como regla general, comenzará a regir a los treinta días después de su presentación a menos que se disponga de otra forma. La acción para impugnar la validez de su faz de un reglamento comienza a correr desde la fecha de su vigencia. 3 L.P.R.A. see. 2127.
En el caso de autos, el D.R.N.A. no presentó ante el Departamento de Estado la enmienda al reglamento para incluir al coquí llanero como una especie en peligro de ex-tinción y su hábitat. Como consecuencia, hoy esta en-mienda no ha entrado en vigor y el término para impugnar judicialmente esa designación de su faz no ha comenzado a transcurrir.
A la luz de lo expuesto, los recursos presentados son prematuros y el Tribunal de Apelaciones, aunque por otras razones, actuó correctamente al declararse sin jurisdicción.
IV
Por los fundamentos analizados, se confirma la senten-cia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta disintió con una opinión escrita. El Juez Presidente Señor Hernández Den-ton disintió por entender que la designación de una especie en peligro de extinción es una determinación hecha al am-paro de un reglamento previamente aprobado, en este caso, el Reglamento para Regir las Especies Vulnerables y en Peligro de Extinción (Reglamento Núm. 6766). Este re-glamento, aprobado conforme a la L.P.A.U., establece el procedimiento y los criterios por los que se rige este tipo de determinación. Así las cosas, cualquier designación de una especie en peligro de extinción hecha al amparo del Regla-mento Núm. 6766 es revisable ante el Tribunal de Apela- *702 clones, pero únicamente en cuanto a si se cumplió con lo dispuesto en el referido reglamento. La Juez Asociada Se-ñora Rodríguez Rodríguez se unió a las expresiones del Juez Presidente Señor Hernández Denton.
— O —

(1) El área propuesta a designarse comprendía 1,649.16 cuerdas de terreno en Toa Baja e incluye la antigua Base Naval de Sabana Seca.

(2) El área asignada como hábitat natural crítico esencial comprende 1,567.86 cuerdas que afectaron la parcela de 83 cuerdas que el Municipio reclamó como necesarias para el cierre del vertedero y parte de los terrenos actuales de éste.

(3) Del referido aviso público no se desprende el área asignada como hábitat natural crítico esencial. Este refiere al portal cibernético del D.R.N.A. para más información.

(4) Destacamos que en la esfera federal la designación de especies en peligro de extinción y sus hábitats asociados se hace mediante reglamentación. 16 U.S.C.A. see. 1533.

(5) Ésta derogó la Ley Núm. 70 de 30 de mayo de 1976 (12 L.P.R.A. ants. sees. 81-106).

(6) Las violaciones al Reglamento Núm. 6766 serán consideradas delitos graves y se castigan con una multa no menor de cinco mil dólares y no mayor de cincuenta mil dólares, o cárcel por un período no menor de noventa días ni mayor de tres años o ambas penas a discreción del tribunal.