

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>Recurrido<br>_____<br>Sabana Seca Land Management, LLC<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales de Puerto Rico<br><br>Recurrido<br>_____<br>Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>Recurrido | Certiorari<br><br>2012 TSPR 94<br><br>185 DPR ____ |

Número del Caso: CC-2008-808
        Cons. CC-2008-820


Fecha: 30 de mayo de 2012


Tribunal de Apelaciones:

        Región Judicial de San Juan


Abogados de la Parte Peticionaria:

        Lcdo. Francis Torres Fernández
        Lcda. Karin Díaz Torres
        Lcdo. Raúl Negrón

Abogados de la Parte Recurrida:

       Lcdo. Antonio Roig Lorenzo
       Lcda. Nashely Pagán Isona
       Lcda. Isis Pérez-Vélez

Oficina del Procurador General:

       Lcda. Zaira Z. Girón Anadón
       Subprocuradora General

       Lcda. Valerie Díaz Aponte
       Procuradora General Auxiliar

Materia: Derecho Administrativo – Procedimientos para la designación de nueva especie como una en peligro crítico de extinción y su hábitat asociado como uno crítico esencial

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>        Peticionario<br><br>              v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>        Recurrido | CC-2008-808 | |
| Sabana Seca Land Management, LLC<br><br>        Peticionario<br><br>              v.<br><br>Departamento de Recursos Naturales y Ambientales de Puerto Rico<br><br>        Recurrido | Cons.<br><br><br><br><br>CC-2008-820 | Certiorari |
| Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>        Peticionario<br><br>              v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>        Recurrido | | |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 30 de mayo de 2012.

Los recursos presentados nos permiten examinar si el Tribunal de Apelaciones posee jurisdicción para revisar la

determinación del Departamento de Recursos Naturales y Ambientales (D.R.N.A.) mediante la cual designa e incorpora una nueva especie como una en peligro crítico de extinción y su hábitat como uno natural crítico esencial en el Reglamento para regir las especies vulnerables y en peligro de extinción en el Estado Libre Asociado de Puerto Rico, Reglamento Número 6766 de 11 de febrero de 2004 (Reglamento Núm. 6766).

Concluimos que la actuación del D.R.N.A. constituye una enmienda al reglamento aprobado. Por tanto, el D.R.N.A. está obligado a seguir el proceso para reglamentar contenido en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. secs. 2101, *et seq.* (L.P.A.U.).

I

Los hechos relevantes ante nuestra consideración tienen su génesis cuando el Secretario del D.R.N.A. anunció su intención de designar al coquí llanero (*Eleutherodactylus Juanariveroi*) como una especie en peligro crítico de extinción y su hábitat asociado como uno crítico esencial.[1] Para ello anunció mediante un aviso público la fecha en la que celebraría la vista pública obligatoria.

---

[1] El área propuesta a designarse comprendía 1,649.16 cuerdas de terreno en Toa Baja e incluye la antigua Base Naval de Sabana Seca.

El Municipio de Toa Baja (Municipio) y Sabana Seca Land Management, LLC (Land Management) comparecieron a la vista pública. Ambos se opusieron a la designación del hábitat propuesto para el coquí llanero. Posteriormente, sometieron por escrito sus comentarios finales ante el D.R.N.A.

El Panel Técnico Legal que presidió los procedimientos recomendó la designación del coquí llanero como una especie en peligro crítico de extinción y concedió un término adicional para evaluar los argumentos en contra de la designación del hábitat como uno crítico esencial. El Secretario del D.R.N.A. acogió y aprobó el aludido informe. De acuerdo con ello, el 9 de noviembre de 2007 el D.R.N.A. publicó en un periódico de circulación general un aviso informando la designación del coquí llanero como una especie en peligro crítico de extinción.

Posteriormente, el Panel Técnico Legal de D.R.N.A suscribió el 15 de noviembre de 2007 un segundo informe sobre la designación del hábitat del coquí llanero como uno crítico esencial. El Secretario de D.R.N.A. aceptó el referido informe.[2] En conformidad, publicó un aviso público el 19 de noviembre de 2007 en dos periódicos para notificar que se había designado el hábitat del coquí llanero como

---

[2]El área asignada como hábitat natural crítico esencial comprende 1,567.86 cuerdas que afectaron la parcela de 83 cuerdas que el Municipio reclamó como necesarias para el cierre del vertedero y parte de los terrenos actuales de éste.

uno crítico esencial.[3] Sin embargo, no presentó la referida reglamentación ante el Departamento de Estado ni estableció fecha de vigencia para ésta.

En desacuerdo con la calificación del hábitat crítico esencial, Land Management y el Municipio acudieron ante el Tribunal de Apelaciones en sendos recursos de revisión. En síntesis, ambos adujeron que la actuación del D.R.N.A. constituía una enmienda al reglamento y que incumplió con los requisitos legales para que ésta procediera. Los recursos fueron consolidados.

Por su parte, el D.R.N.A. cuestionó la jurisdicción del foro apelativo intermedio. Planteó que el hábitat definido no constituía una enmienda al reglamento sino una determinación emitida por la agencia a base del reglamento previamente aprobado, por lo que ésta no era revisable por el foro intermedio.

El 30 de junio de 2008 el Tribunal de Apelaciones emitió su sentencia mediante la cual concluyó que carecía de jurisdicción para atender el asunto. Resolvió que la designación del hábitat crítico esencial no constituye una enmienda al reglamento sino una orden que lleva a efecto determinaciones fundamentadas a base del Reglamento Núm. 6766. Indicó que el D.R.N.A. no modificó o varió la redacción del reglamento.

_____

[3]Del referido aviso público no se desprende el área asignada como hábitat natural crítico esencial. El mismo refiere al portal cibernético del D.R.N.A. para más información.

Inconformes, el Municipio y Land Management acudieron con sendos recursos de *certiorari* ante este Tribunal. En lo pertinente, ambos peticionarios argumentaron que erró el Tribunal de Apelaciones al decidir que carecía de jurisdicción para atender las revisiones presentadas y al concluir que las acciones del D.R.N.A. no constituyen una acción reglamentaria sujeta a revisión.

El 27 de febrero de 2009 expedimos los recursos presentados por el Municipio y Land Management y el 14 de agosto de 2009 los consolidamos. Estamos en posición de resolver.

II

A.

Para atender la polémica suscitada es necesario enmarcar la discusión en los estatutos sobre protección a la vida silvestre y su hábitat crítico para determinar si en efecto la actuación del D.R.N.A. constituye un ejercicio sujeto a la revisión del Tribunal de Apelaciones. Veamos.

La Ley Orgánica del Departamento de Recursos Naturales y Ambientales, Ley Núm. 23 de 20 de junio de 1972, según enmendada, 3 L.P.R.A. secs. 152, *et seq.*, creó al D.R.N.A. con el propósito de implantar la política pública de arraigo constitucional sobre la más eficaz conservación, desarrollo y aprovechamiento de los recursos naturales. Véase, Art. VI, Sec. 19, de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1; 3 L.P.R.A. sec. 153.

Entre las funciones y deberes del Secretario del D.R.N.A. se encuentra el aprobar, enmendar y derogar reglamentos para llevar a cabo los objetivos que le fueron encomendados. Entre éstos, la Ley Núm. 31 de 29 de septiembre de 1983 encomendó al Secretario del D.R.N.A el deber de tomar todas las medidas necesarias para la conservación, preservación, distribución, manejo, introducción, propagación y restauración de especies de vida silvestre, animales, plantas –tanto terrestres como acuáticas– amenazadas o en peligro de extinción en Puerto Rico. 3 L.P.R.A. sec. 155 (i), (l). De igual forma, la Ley Núm. 31, *supra*, requirió al Secretario del D.R.N.A. la celebración de vistas públicas que permitieran a la ciudadanía participar en el proceso de designar las especies a protegerse. Ello con el fin de "garantizar la participación pública en el proceso de **reglamentación** de la designación de las especies que están amenazadas o en peligro de extinción" para disponer de "amplia información para tomar las medidas más provechosas de conservación y manejo de estas especies". (Énfasis nuestro). 1983 Leyes de Puerto Rico 458.[4]

La política encaminada a la conservación de la vida silvestre y en particular del hábitat natural de dichas especies conllevó la aprobación de La Nueva Ley de Vida Silvestre de Puerto Rico, Ley Núm. 241-1999, según

---

[4]Destacamos que en la esfera federal la designación de especies en peligro de extinción y sus hábitats asociados se hace mediante reglamentación. 16 U.S.C.A. sec. 1533.

enmendada, 12 L.P.R.A. secs. 107, *et seq.* (Ley Núm. 241).[5] El fin del referido estatuto consistió en actualizar y renfocar los principios contenidos en la protección de vida silvestre y su hábitat en concordancia con la información científica recopilada, las necesidades y privilegios de los ciudadanos para el disfrute de actividades relacionadas con los recursos de vida silvestre y su medio ambiente. 12 L.P.R.A. sec. 107a.

La Ley Núm. 241, *supra*, estableció que el procedimiento para atender la petición de cualquier organización o entidad pública para promover la conservación de una especie como vulnerable o en peligro de extinción; o de su hábitat natural crítico; se llevaría a cabo conforme a las disposiciones contenidas en la L.P.A.U. 12 L.P.R.A. sec. 107a. A su vez, el estatuto facultó al Secretario del D.R.N.A. para promulgar reglamentos relativos a la designación de las especies que se consideren vulnerables o en peligro de extinción y tomar las medidas necesarias para protegerlas. 12 L.P.R.A. sec. 107g (i).

En virtud de la autoridad conferida por la Ley Núm. 23, *supra*, la Ley Núm. 241, *supra* y de las disposiciones contenidas en la L.P.A.U. el D.R.N.A. adoptó el Reglamento Núm. 6766 con el objetivo de: (1) identificar, conservar y preservar las especies vulnerables y en peligro de

---

[5]Ésta derogó la Ley Núm. 70 de 30 de mayo de 1976, 3 L.P.R.A. secs. 81-106.

extinción; (2) propiciar la propagación y supervivencia de especies vulnerables o en peligro de extinción; (3) identificar y promover la conservación de los hábitats naturales críticos y los esenciales; (4) reglamentar la importación y exportación de especies vulnerables o en peligro de extinción; (5) adoptar criterios de designación utilizados por la comunidad científica internacional para especies cuya tendencia poblacional podría llegar a estar en peligro crítico e incluso extinguirse en un periodo de tiempo muy breve. Sec. 1.03 del Reglamento Núm. 6766. Con estos fines, se establecieron los criterios científicos y socioeconómicos a considerar para cumplir con los propósitos encomendados por la Ley Núm. 241, *supra*. Además, el reglamento prohíbe causar o propiciar la creación de un daño real o potencial a especies vulnerables o en peligro de extinción e impide modificaciones a un hábitat natural crítico esencial designado sin contar con un plan de mitigación aprobado. Secs. 2.01-2.02 del Reglamento Núm. 6766.

En lo que concierne al procedimiento para la designación de una especie como una vulnerable o en peligro de extinción y de su hábitat, el Reglamento Núm. 6766 requirió para cualquier designación de una especie vulnerable o en peligro de extinción la publicación de un aviso en dos periódicos de mayor circulación para permitir al público conocer la designación que el D.R.N.A. propone realizar. Sec. 2.07 del Reglamento Núm. 6766. Al mismo

tiempo, garantiza la participación ciudadana durante la designación o cambios en las especies vulnerables o en peligro de extinción y de su hábitat crítico al requerir la notificación y celebración de vistas públicas. Sec. 2.08 del Reglamento Núm. 6766. Además, el reglamento acogió lo dispuesto en la Ley Núm. 241, *supra*, en cuanto a que las solicitudes de calificación estarían sujetas al procedimiento dispuesto por la L.P.A.U. Sec. 3.03 del Reglamento Núm. 6766. Un examen de la ley orgánica que crea el D.R.N.A. y de la Nueva Ley de Vida Silvestre revela que no eximen expresamente al D.R.N.A. de cumplir con el proceso de L.P.A.U. al momento de designar e incluir el Reglamento Núm. 6766 una especie en peligro de extinción y su hábitat. Tampoco la L.P.A.U. excluye al D.R.N.A. de sus disposiciones. 3 L.P.R.A. sec. 2101. Ello es cónsono con el propósito para el cual fue creada la L.P.A.U. de fijar un cuerpo de reglas mínimas que proveyeran uniformidad al proceso decisorio de la administración pública. Véase, Pagán Ramos v. F.S.E., 129 D.P.R. 888, 897 (1992). Es por ello que el Reglamento Núm. 6766 establece los criterios para hacer las determinaciones sobre las designaciones para proteger las especies en peligro de extinción. Éstos deben ser cumplidos a cabalidad independiente de quién solicite o promueva la designación pretendida.

Los nombres de las especies vulnerables o en peligro de extinción que el D.R.N.A. determine para formar parte del Apéndice 1 del Reglamento Núm. 6766 de acuerdo con su

Sec. 3.05. Asimismo, el hábitat crítico definido para las especies vulnerables o en peligro de extinción está contenido en el Apéndice 2. Véase Sec. 4.06 del Reglamento Núm. 6766. La importancia de estos apéndices consiste en que tanto el reglamento, la Ley Núm. 2, *supra*, y la Ley Núm. 241, *supra*, imponen obligaciones a las personas y penalidades que pueden incluir hasta pena de cárcel por violaciones a éstas. Véanse: Art. 8 de la Ley Núm. 70; Art. 22 de la Ley Núm. 241, 12 L.P.R.A. sec. 107t y Art.6 del Reglamento Núm. 6766.[6]

B.

Como examinamos, la Ley Núm. 241, *supra*, y el Reglamento Núm. 6766 establecieron que el procedimiento para la designación de las especies vulnerables y en peligro de extinción o de su hábitat natural crítico debe tramitarse conforme la L.P.A.U. Este estatuto dispuso las características y requisitos que las agencias administrativas deben cumplir durante los procesos de adjudicación y reglamentación que llevan a cabo. Centro Unido de Detallistas v. Com. Serv. Púb., 174 D.P.R. 174, 182 (2004); J.P. v. Frente Unido I, 165 D.P.R. 445, 461 (2005). Los procesos de adjudicación están definidos como aquellos pronunciamientos mediante los cuales una agencia

---

[6]Las violaciones al Reglamento Núm. 6766 serán consideradas delitos graves y se castigan con una multa no menor de cinco mil dólares y no mayor de cincuenta mil dólares, o cárcel por un período no menor de noventa días ni mayor de tres años o ambas penas a discreción del tribunal.

determina los derechos, obligaciones o privilegios que le corresponden a una parte. 3 L.P.R.A. sec. 2102(b). Mientras que la reglamentación es el procedimiento seguido por la agencia para formular, adoptar, enmendar o derogar una regla o reglamento. 3 L.P.R.A. sec. 2102(m).

En lo que nos compete, la L.P.A.U. exige el cumplimiento por parte de las agencias administrativas de determinados requisitos al momento de reglamentar; al aprobar, enmendar o derogar una regla o reglamento. 3 L.P.R.A. sec. 2121-2141 (2006). Para que la reglamentación sea válida deben cumplirse cuatro requisitos básicos: (1) notificar al público la reglamentación a aprobarse; (2) proveer oportunidad para la participación ciudadana, incluyendo vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente; y (4) publicar la reglamentación aprobada. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 690-691 (2000); además, Tosado v. A.E.E., 165 D.P.R. 377, 389 (2005); Asociación Maestros v. Comisión, 159 D.P.R. 81, 93 (2003); Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002); Secs. 2.1, 2.2, 2.3, 2.8, 2.11 de L.P.A.U., 3 L.P.R.A. 2121-2123, 2128 y 2131. Todos éstos constituyen requisitos imprescindibles y de ineludible cumplimiento. Centro Unido de Detallistas v. Com. Serv. Púb., *supra*, pág. 184.

El incumplimiento con los requisitos establecidos por la L.P.A.U. permite a una persona impugnar de su faz una

regla o reglamento aprobado por una agencia administrativa dentro del término de treinta días siguientes a la fecha de la vigencia de ésta con un recurso a ser presentado ante el Tribunal de Apelaciones. 3 L.P.R.A. sec. 2127.

El trámite de reglamentación establecido en la L.P.A.U. no aplica a toda regulación que se formule por las agencias administrativas. Tosado v. A.E.E., *supra*, pág. 389. La Sec. 1.3(l) del estatuto define lo que constituye una regla o reglamento y, a su vez, identifica aquellas acciones que no se considerarán como tal al disponer como sigue:

> [c]ualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia. El término incluye la enmienda, revocación o suspensión de una regla existente. Quedan excluidos de esta definición:
>
> (1) Reglas relacionadas con la administración interna de las agencias que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general.
>
> (2) Formas e instrucciones, declaraciones interpretativas y declaraciones de política general, que son meramente explicativas y no tienen ningún efecto legal.
>
> (3) Decretos mandatorios aprobados por la Junta de Salario Mínimo.
>
> (4) Órdenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emitan o puedan emitir en el futuro por otras agencias, y que meramente realizan una determinación de uno o varios parámetros de reglamentación con base a un reglamento previamente aprobado y que contiene las normas para su expedición. 3 L.P.R.A. sec. 2102(l).

De acuerdo con ello, la L.P.A.U. distingue entre reglas legislativas y no legislativas. Tosado v. A.E.E., *supra*, pág. 389. Dependiendo del tipo de regla es el procedimiento a seguir para su aprobación, derogación o enmienda. Asociación Maestros v. Comisión, *supra*, pág. 92.

Los incisos (1) y (2) de la Sec. 1.3(l) de la L.P.A.U., *supra*, son las conocidas reglas no legislativas que agrupan las normas procesales e interpretativas. Éstas, a pesar de vincular administrativamente, responden a la aprobación de directrices o reglamentaciones informales cuyo objetivo es uniformar los procesos, pautar la discreción administrativa u otros fines internos. Mun. de San Juan v. J.C.A., *supra*, págs. 691-692; Tosado v. A.E.E., *supra*, págs. 390-392; Asociación Maestros v. Comisión, *supra*, pág. 93; D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, págs. 109-110, 125-130. El común denominador de éstas consiste en que las reglas no legislativas constituyen pronunciamientos administrativos que no alteran los derechos y obligaciones de los individuos. Véase González v. E.L.A., 167 D.P.R. 400, 411 (2006) citando a R.J. Pierce, Distinguishing Legislative Rules from Interpretative Rules*,* 52 Admin. L. Rev. 547 (2000), y a H. Meléndez Juarbe, Derecho Administrativo, 73 Rev. Jur. U.P.R. 509, 510 (2004).

A su vez, la L.P.A.U. dispensa del procedimiento formal de reglamentación las órdenes que fijen precios del

Departamento de Asuntos del Consumidor (D.A.Co.) y otros decretos u órdenes similares basados en un reglamento aprobado. Este inciso no formó parte del proyecto original presentado al promulgar la legislación. Éste fue recomendado por la Comisión de lo Jurídico Civil de la Cámara de Representantes en su Informe del Sustitutivo al P. del S. 350, de 3 de junio de 1988, 10ma. Asamblea Legislativa, 4ta Sesión Ordinaria, al endosar el proyecto que culminó con la aprobación de la L.P.A.U.

La ley orgánica que crea a D.A.Co., Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341, *et seq.*, establece específicamente que las órdenes de precio emitidas a base de los reglamentos que contienen criterios para dicha fijación, por regla general, entran en vigor en la misma fecha de su publicación en un periódico de mayor circulación en Puerto Rico y dispensa de la celebración de vistas públicas y de su radicación ante el Departamento de Estado para su vigencia. 3 L.P.R.A. sec. 341g. De esta forma, al aprobar la L.P.A.U. se integró el lenguaje contenido en la ley orgánica de D.A.Co. y circunstancias similares que pudieran existir en otras agencias.

Por otra parte, las denominadas reglas legislativas crean o afectan derechos, imponen obligaciones y establecen un patrón de conducta que tiene fuerza de ley. Asociación Maestros v. Comisión, *supra*, pág. 93; Mun. de San Juan v. J.C.A., *supra*, pág. 692. De esta forma, cualquier regla que tenga un efecto obligatorio significativo en los derechos

sustantivos de un individuo constituye una regla legislativa. Fernández Quiñones, op. cit., pág. 123. Es por ello que se expresa lo siguiente:

> Debe señalarse que el principio cardinal que regula las consecuencias legales de la reglamentación es que tiene "fuerza y efecto de ley". Equivale ello a decir que tiene la misma fuerza que un estatuto y obliga también a las agencias que no tienen discreción para repudiarla. Su alcance prescribe patrones de conducta a los cuales se tienen que conformar los afectados y cubiertos por ella. Puede el infractor de esa regulación estar sujeto de consecuencias penales. En términos prácticos un ciudadano puede enfrentarse a tantas dificultades por violar una regla sustantiva o legislativa de una agencia como por violar un estatuto aprobado por la Asamblea Legislativa. Íd., págs. 124-125.

Lo expresado revela que las reglas legislativas proveen a las partes afectadas una notificación previa sobre qué conducta es permisible e impermisible. Por la importancia que éstas revisten, y el efecto que pueden acarrear para el público en general, su promulgación requiere el cumplimiento del procedimiento de reglamentación establecido por la L.P.A.U. Asociación Maestros v. Comisión, supra. De esta forma, se promueve un sistema más justo en el cual las partes afectadas estén bien informadas sobre las exigencias de la ley y puedan cumplir con ellas de manera más cabal, efectiva y eficiente. Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105, 131-132 (2002).

III

En los recursos ante nuestra consideración el Municipio de Toa Baja y Land Management sostuvieron que la

designación del coquí llanero y la delineación territorial determinada como su hábitat natural crítico esencial debe cumplir con el procedimiento dispuesto por la L.P.A.U., por lo que es revisable por el Tribunal de Apelaciones acorde con lo dispuesto en su Sec. 2.7, 3 L.P.R.A. sec. 2127. Argumentaron que esas determinaciones constituyen enmiendas a una regla o reglamento acorde con la L.P.A.U. Ambos peticionarios expusieron que la ley orgánica del D.R.N.A., la Ley Núm. 241 y el Reglamento Núm. 6766 requieren el cumplimiento con el proceso de reglamentación establecido por la L.P.A.U. Recalcaron que la designación constituye una regla legislativa que añade una nueva especie y su hábitat al Reglamento Núm. 6766 cuyo efecto reviste obligaciones directas para la ciudadanía general y le expone a consecuencias por su incumplimiento. A su vez, distinguieron el procedimiento llevado por el D.R.N.A. de las órdenes de precio del D.A.Co., por lo que expusieron que la determinación realizada por el D.R.N.A. no está exenta de cumplir con el proceso de reglamentación establecido por la L.P.A.U.

Por el contrario, el D.R.N.A. argumentó que la designación impugnada no resulta en una enmienda a un reglamento que requiera seguir el proceso de reglamentación establecido por la L.P.A.U. Así, sostuvo que el Tribunal de Apelaciones carecía de jurisdicción para atender los recursos presentados ante ese foro. Con el propósito de eximir la designación de la especie en peligro de extinción

y su hábitat natural crítico del proceso contemplado por la L.P.A.U. equiparó su actuación a las órdenes de precio emitidas por D.A.Co. No nos convence.

Enmarcada la normativa aplicable resalta que la ley orgánica del D.R.N.A., la Ley Núm. 241 y el Reglamento Núm. 6766 expresamente disponen que la designación de una especie como una vulnerable o en peligro de extinción y de su hábitat debe resolverse conforme dispone la L.P.A.U. Igualmente, la exposición de motivos de la Ley Núm. 31, *supra*, revela que la designación de éstas constituye un proceso de reglamentación. El hecho de que la lista de especies en peligro de extinción obre en el apéndice del Reglamento no puede alterar este análisis.

No albergamos duda de que la designación realizada por el D.R.N.A. es un ejercicio de reglamentación que crea, afecta e impone derechos significativos a la ciudadanía general con fuerza de ley, por lo que esa acción cuasilegislativa no está exenta del proceso de reglamentación fijado por la L.P.A.U. Abona a dicha conclusión el hecho de que todos los estatutos examinados exigen al D.R.N.A. un aviso público sobre la propuesta de designación e imponen la oportunidad de la participación ciudadana y la celebración de vistas públicas. Igualmente, y como parte del reglamento, éste contiene dos apéndices que incluyen los nombres de las especies vulnerables o en peligro de extinción determinadas y su hábitat crítico que

notifican formalmente los ejemplares y el ecosistema a protegerse.

Así las cosas, la D.R.N.A., al designar una nueva especie como una en peligro de extinción y delimitar su hábitat natural crítico esencial, está vedada de ignorar el mandato legislativo. A poco examinamos las actuaciones realizadas por el D.R.N.A. destaca que éstas constituyen un ejercicio de reglamentación que no está excluido por la Sec. 1.3(l) del cumplimiento de las disposiciones contenidas en la L.P.A.U. El simple hecho de que la determinación realizada por el D.R.N.A. esté basada en el reglamento no es razón para eximirle del cumplimiento de L.P.A.U. Recordemos, que una vez aprobado un reglamento la agencia tiene el deber de cumplir con el mismo. Tal ejercicio no se asemeja a las órdenes de precio emitidas por D.A.Co. Mediante éstas, el D.A.Co. fija y revisa precios y márgenes de beneficio en los productos que forman parte del reglamento y los cuales la comunidad conoce de antemano. Al hacerlo, prosigue el trámite establecido en su ley orgánica la cual expresamente le dispensa de la celebración de vistas públicas y la radicación ante el Departamento de Estado de éstas para su vigencia. Ello es diferente a la designación del coquí llanero como un animal en peligro de extinción y la de su ambiente cuyo efecto real es añadir al Reglamento Núm. 6766 una nueva especie y delimitar su hábitat a ser protegido. La consecuencia de la calificación obliga a la ciudadanía general a no causar o

propiciar la creación de un daño real o potencial a ésta. Además, impide modificar el hábitat sin un plan de mitigación aprobado por el D.R.N.A. o poseer, transportar, coger, destruir o exportar la especie. Cualquier violación a ello conlleva penalidades que incluyen la imposición de multas que pueden ascender a cincuenta mil dólares o cárcel hasta tres años.

A todas luces el ejercicio realizado por el D.R.N.A. no persigue clarificar la reglamentación en cuestión ni dar uniformidad a sus procedimientos. Tampoco es similar a las órdenes de precio emitidas por el D.A.Co. Transciende que la inclusión de la especie constituye una **enmienda sustantiva** al Reglamento Núm. 6766, al incluir la designación de una nueva especie y su hábitat como una protegida por la ley, por lo que evidentemente estamos ante la promulgación de una regla legislativa que debió aprobarse mediante el procedimiento establecido por la L.P.A.U. para la aprobación de reglamentación administrativa.

Ante tal panorama, y conforme dispone la Sec. 2.8 de la L.P.A.U., 3 L.P.R.A. sec. 2128, todo reglamento aprobado por cualquier agencia debe ser presentado ante el Departamento de Estado. Como regla general, comenzará a regir a los treinta días después de su radicación a menos que se disponga de otra forma. La acción para impugnar la validez de su faz de un reglamento comienza a decursar desde la fecha de vigencia del mismo. 3 L.P.R.A. sec. 2127.

En el caso de autos, el D.R.N.A. no presentó ante el Departamento de Estado la enmienda al reglamento para incluir al coquí llanero como una especie en peligro de extinción y su hábitat. Como consecuencia, hoy día esta enmienda no ha entrado en vigor y el término para impugnar judicialmente esa designación de su faz no ha comenzado a transcurrir.

A la luz de lo expuesto, los recursos presentados son prematuros y el Tribunal de Apelaciones, aunque por otras razones, actuó correctamente al declararse sin jurisdicción.

## IV

Por los fundamentos antes analizados, se confirma la sentencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>Recurrido | CC-2008-808 | |
| Sabana Seca Land Management, LLC<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales de Puerto Rico<br><br>Recurrido | Cons.<br><br><br><br>CC-2008-820 | Certiorari |
| Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>Recurrido | | |

SENTENCIA

San Juan, Puerto Rico, a 30 de mayo de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la sentencia emitida por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta disiente con opinión escrita. El Juez Presidente señor Hernández Denton disiente por entender que la designación de una especie en peligro de extinción es una determinación hecha al amparo de un reglamento previamente aprobado, en este caso, el Reglamento para Regir las Especies Vulnerables y en Peligro de Extinción (Reglamento 6766). Este reglamento, aprobado conforme a la L.P.A.U., establece el procedimiento y los criterios por los que se rige este tipo de determinación. Así las cosas, cualquier designación de una especie en peligro de extinción hecha al amparo del Reglamento 6766 es revisable ante el Tribunal de Apelaciones, pero únicamente en cuanto a si se cumplió con lo dispuesto en el referido reglamento. La Juez Asociada señora Rodríguez Rodríguez se une a las expresiones del Juez Presidente señor Hernández Denton.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>Recurrido | CC-2008-808 | Certiorari |
| Sabana Seca Land Management, LLC<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales de Puerto Rico<br><br>Recurrido | Cons.<br><br>CC-2008-820 | |
| Municipio de Toa Baja, Hon. Aníbal Vega Borges<br><br>Peticionario<br><br>v.<br><br>Departamento de Recursos Naturales y Ambientales (D.R.N.A.)<br><br>Recurrido | | |

Opinión disidente emitida por la Jueza Asociada señora FIOL MATTA

En San Juan, Puerto Rico, a 30 de mayo de 2012.

Entiendo que el Tribunal de Apelaciones concluyó correctamente que la designación de un animal o una planta

como especie en peligro de extinción y de un área como hábitat natural crítico esencial que decide hacer el Departamento de Recursos Naturales y Ambientales (DRNA) no constituyen enmiendas a su Reglamento 6766 para Regir las Especies Vulnerables y en Peligro de Extinción de 2004.[7] Se trata, más bien, de la aplicación de las normas establecidas en el Reglamento para la identificación de estas especies y estos hábitats. Por eso, en este caso, no era necesario que el DRNA cumpliera con los requisitos que impone la Ley de Procedimiento Administrativo Uniforme (LPAU) para la aprobación y modificación de reglamentos, y la designación que hizo del coquí llanero y su hábitat entraban en vigor sin tenerse que presentar ante el Departamento de Estado.[8] Por lo mismo, la acción administrativa no estaba sujeta a una impugnación de su faz por incumplir con el proceso de reglamentación. Sin embargo, el Tribunal de Apelaciones tenía jurisdicción para atender un recurso de revisión administrativa en el cual analizara si la orden de designación emitida por el DRNA al amparo de su Reglamento 6766, previamente aprobado, cumplió con los criterios establecidos en éste.[9]

---

[7] Reglamento para Regir las Especies Vulnerables y en Peligro de Extinción, Departamento de Recursos Naturales y Ambientales (DRNA), Reglamento Núm. 6766 de 11 de febrero de 2004 [Reglamento 6766].

[8] Ley de Procedimiento Administrativo Uniforme [LPAU], Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. secs. 2101-2201.

[9] En sus recursos de revisión ante el Tribunal de Apelaciones, además de argumentar que no se cumplió con el procedimiento establecido en la LPAU para enmendar un

Para la mejor comprensión de la controversia de este caso, es preciso distinguir entre la designación de especie y hábitat que hace el DRNA luego de una evaluación por parte de sus peritos y el proceso que sigue el Departamento para hacer tal designación cuando quien la solicita es una persona o entidad externa a la agencia. Nuestro ordenamiento dispone requisitos distintos para tramitar cada una. La primera tiene que cumplir con ciertos requerimientos de notificación y participación ciudadana, pero no con todas las disposiciones de la LPAU, mientras que la evaluación de la segunda debe observar todas las reglas del procedimiento administrativo uniforme.

La Ley Orgánica del DRNA le impone a este departamento el deber de hacer valer las políticas públicas y los programas de conservación y mejor utilización de los recursos naturales en Puerto Rico.[10] Además, entre las facultades que confiere al Secretario de esta agencia, incluye la de adoptar reglamentos con el fin

_____

reglamento, las partes alegaron que el DRNA no consideró algunos de los criterios que exige el Reglamento 6766 para las designaciones de hábitat natural crítico esencial, incluyendo el impacto ambiental y social de la designación y que la evidencia científica estableciera que ese era el único lugar con las características necesarias para la supervivencia de la especie. El foro apelativo tenía jurisdicción para ejercer su función revisora en cuanto a estos señalamientos sobre la orden dictada por la agencia. Sec. 4.1, LPAU, 3 L.P.R.A. sec. 2171.

[10] Art. 3, Ley Orgánica del Departamento de Recursos Naturales y Ambientales, Ley Núm. 23 de 20 de junio de 1972, según enmendada, 3 L.P.R.A. sec. 153.

de designar y preservar las especies de vida silvestre amenazadas o en peligro de extinción.[11] Esos reglamentos deben garantizar el derecho de la ciudadanía a participar mediante vistas públicas.[12]

Asimismo, la Ley de Vida Silvestre declara como política pública del Gobierno de Puerto Rico la protección de las especies de vida silvestre y del hábitat natural de éstas, y brinda unos criterios generales para su modificación.[13] Además, crea una junta con biólogos especialistas en vida silvestre para asesorar al Secretario del DRNA con relación a la designación de hábitats críticos y la adquisición de terrenos para reservas.[14] Esta ley dispone que cualquier organización que promueva la conservación de la vida silvestre puede solicitar la designación de una especie como vulnerable o en peligro de extinción y la de su hábitat como natural crítico, presentando información científica que lo justifique; el Departamento resolverá esa solicitud

---

[11] La Exposición de Motivos de la Ley Núm. 31 de 29 de septiembre de 1983, que enmendó la Ley Orgánica del DRNA, señala que es imperativo que el Departamento posea todasas facultades y poderes necesarios para la preservación de las especies de vida silvestre. Sobre la participación pública en el proceso de designación de especies, indica que es importante para que el Departamento cuente con información amplia para tomar las medidas más provechosas para la conservación de las especies.

[12] Art. 5(l), Ley Núm. 23 de 1972, 3 L.P.R.A. sec. 155(l).

[13] Art. 3, Ley de Vida Silvestre, Ley Núm. 241 de 15 de agosto de 1999, 12 L.P.R.A. sec. 107a.

[14] Art. 4, Ley 241 de 1999, 12 L.P.R.A. sec. 107b.

conforme a la LPAU.[15] La Ley de Vida Silvestre también faculta al Secretario del DRNA a promulgar reglamentos relativos a la designación de especies vulnerables o en peligro de extinción y tomar las medidas necesarias para su perpetuación.[16]

El DRNA adoptó el Reglamento 6766 para guiar sus procedimientos en la ejecución de la facultad de designar y preservar especies amenazadas que le confiere su Ley Orgánica. El poder delegado al Secretario del DRNA para identificar especies en peligro e imponer restricciones con el fin de protegerlas está limitado por los criterios que establece el Reglamento 6766 en su Artículo 3, sobre Identificación, Designación y Determinación de Especies Vulnerables y en Peligro de Extinción. En el artículo 3.01, el Reglamento describe los factores que se utilizan para ubicar a las especies identificadas en una de cinco categorías según el nivel de protección que requieren. El artículo 3.02 ordena considerar también otros aspectos, como la sobre utilización de la especie, la depredación y la insuficiencia de mecanismos de protección. El artículo 3.04 indica que el Secretario tomará la determinación sobre la designación de especies basándose solamente en información científica y luego de revisar la condición en que se encuentra la planta o el animal. Este artículo también le concede discreción al Secretario del DRNA para

---

[15] Art. 3, Ley 241 de 1999, 12 L.P.R.A. sec. 107a.
[16] Art. 9, Ley 241 de 1999, 12 L.P.R.A. sec. 107g(i).

tomar acción inmediata cuando determina que se debe proteger a una especie como medida de emergencia.

El Artículo 3 sólo menciona la LPAU en su artículo 3.03, que permite que personas u organizaciones dedicadas a promover la conservación de especies puedan solicitarle al Secretario que designe una especie como vulnerable o en peligro de extinción o su hábitat como uno natural crítico.[17] Le exige a la persona o entidad que fundamente su petición con información científica y le exige al DRNA resolver la solicitud de acuerdo con el procedimiento establecido en la LPAU o con cualquier otro mecanismo análogo que promulgue.[18] Este requisito permite que la persona que hace la solicitud de designación tenga certeza sobre el proceso que se va a seguir respecto a su petición y conozca sus derechos en cuanto a participación y notificación. También facilita que el resto de la ciudadanía sepa que se está evaluando con rigor la solicitud que hizo la persona externa a la agencia. Por eso, el cumplimiento con la LPAU o con cualquier otro mecanismo similar sólo aplica cuando el proceso de designación de especie o hábitat surge de una inquietud de un ciudadano o de una entidad pública o privada interesada en la conservación ambiental, y no cuando lo inicia el

---

[17] De hecho, la LPAU sólo aparece mencionada dos veces en todo el Reglamento 6766: en el artículo 3.03 y en el artículo 1.02 sobre Base Legal, que indica que el Reglamento es promulgado bajo la autoridad conferida al DRNA por su Ley Orgánica, la Ley de Vida Silvestre y la LPAU.

[18] Art. 3.03, Reglamento 6766.

Departamento, que estudia rutinariamente el estado de las especies.

Las otras dos secciones del Artículo 3 se refieren a la lista de especies protegidas y ninguna hace referencia a la LPAU o al procedimiento que se debe seguir para añadir especies a ésta. El artículo 3.05 se limita a informar que los nombres de las especies que el Secretario ha determinado que están en peligro de extinción y las de especies vulnerables por su parecido con éstas aparecen en el Apéndice 1 del Reglamento. Mientras, el artículo 3.06 dispone el deber del Secretario del DRNA de revisar la condición de las especies incluidas en la lista al menos cada 5 años.

Lo mismo sucede con el Artículo 4, que reglamenta la Designación de Hábitats. El artículo 4.01 brinda al Secretario del DRNA la facultad de determinar el hábitat natural de una especie en peligro o hacer cambios al mismo en cualquier momento. Los artículos 4.02 al 4.04 limitan esa discreción al establecer los criterios que se deben considerar para designar el hábitat y decidir si es del tipo natural crítico o natural crítico esencial. Asimismo, el artículo 4.05 dispone los elementos que se tienen que tomar en cuenta para modificar los hábitats. El artículo 4.06 informa que la lista de los hábitats designados se encuentra en el Apéndice 2. Además, señala que cualquier designación de hábitat crítico que hagan las agencias federales para especies dentro de la jurisdicción de

Puerto Rico se acoge como una que cumple con todos los requisitos del Reglamento 6766 y se añade a la lista. En ninguna parte de esta sección se exige el cumplimiento con la LPAU.[19]

Lo que sí requiere el Reglamento 6766 al Secretario del DRNA es que publique un aviso, en dos periódicos de circulación general, informando cualquier designación de especie vulnerable o en peligro de extinción y de sus hábitats, así como cambios a éstas.[20] Asimismo, le ordena garantizar la participación ciudadana en el proceso de designación de especies y de hábitats, de cambios en las condiciones y de remociones en las listas, a través de vistas públicas anunciadas con 30 días de antelación.[21] No exige que se cumpla con las demás disposiciones de la LPAU. Esto se debe a que el Reglamento 6766 fue adoptado para establecer los criterios que deben guiar al DRNA al hacer las determinaciones sobre designaciones. El acto de la designación no es la reglamentación, sino un ejercicio autorizado derivado de ésta.

De esta manera, las leyes y reglamentos relacionados con la designación de especies en peligro de extinción y sus hábitats autorizan la determinación hecha por el DRNA en este caso y la regulan como una orden basada en un

---

[19] Los otros tres artículos de la sección sobre hábitats a los planes, los equipos y la adquisición de terrenos para la recuperación y supervivencia de las especies. Arts. 4.07-4.09, Reglamento 6766.

[20] Art. 2.07, Reglamento 6766. Este artículo es parte de las Disposiciones Especiales generales del Reglamento.

reglamento aprobado anteriormente y que contiene las bases para su expedición. La LPAU, en su artículo 1.3, exceptúa este tipo de decretos de su marco de aplicación, al excluirlos expresamente de la definición de regla o reglamento.[22] Con ello, se facilita la implantación de la política pública de protección de las especies en peligro de extinción sin dejar de informar al público sobre las propuestas, permitirles participar en el proceso de evaluación de éstas y notificar la determinación final sobre el asunto. La publicación de la determinación final es la que permite que luego se puedan imponer las penalidades que establece el Artículo 6 del Reglamento 6766 a quienes violen las disposiciones del Reglamento en relación con cualquiera de las especies designadas y sus hábitats críticos.

En este caso, se cumplió con el procedimiento requerido para las designaciones hechas por el Departamento. Se notificó al público, mediante un aviso publicado en un periódico de circulación general en octubre de 2006, que los documentos sobre la propuesta de designar al coquí llanero como especie en peligro crítico de extinción y su hábitat como uno crítico esencial

---

[21] Art. 2.08, Reglamento 6766.

[22] "Quedan excluidos de esta definición [de regla o reglamento]: (4) Órdenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emitan o puedan emitir en el futuro por otras agencias, y que meramente realizan una determinación de uno o varios parámetros de reglamentación con base a un reglamento previamente aprobado y que contiene las normas

estaban disponibles en las oficinas del DRNA y en su portal electrónico.[23] La propuesta final incluyó la descripción del coquí y su hábitat, análisis estadísticos de la presencia del coquí desde que se descubrió, estudios topográficos e hidrográficos, mapas del área única en la Isla en que habita y estudios sobre la contaminación de la zona por actividades humanas, entre otros detalles.[24] Se informó al público sobre la propuesta del Departamento para la designación del hábitat del coquí llanero en el Municipio de Toa Baja como uno natural crítico esencial y se anunciaron vistas públicas, en julio de 2007. En agosto de 2007, se celebraron vistas públicas en las que las peticionarias explicaron que se oponían a que parte del terreno propuesto se declarara hábitat crítico porque impedía los planes de desarrollo y ciertas actividades de interés público que tenían programadas para esas áreas. También sometieron comentarios por escrito. Se nombró un panel técnico del DRNA para evaluar las objeciones. En noviembre de 2007, el panel emitió un informe en el que recomendó cambiar la delimitación del hábitat, reduciendo

_____

para su expedición". (Énfasis suplido.) Sec. 1.3 (l)(4), LPAU, 3 L.P.R.A. sec. 2102 (l)(4).

[23] Las partes peticionarias reconocen que el coquí llanero debe designarse especie en peligro crítico de extinción; lo que objetan es la delimitación de su hábitat crítico esencial.

[24] DRNA, Designación del coquí llanero como especie en peligro crítico de extinción y Designación del hábitat natural crítico esencial del coquí llanero, julio 2007.

en más de 80 cuerdas el terreno designado.[25] El Departamento acogió la recomendación. Ese mismo mes, el DRNA publicó, en dos periódicos de circulación general, un aviso en el que anunció la designación del hábitat del coquí llanero como uno crítico esencial.[26]

Así, el DRNA cumplió con todo lo que el ordenamiento le exige para el tipo de designación que hizo. Para esa determinación, la Ley Orgánica del Departamento sólo requiere la celebración de vistas públicas y el Reglamento 6766 impone únicamente las vistas y un aviso público. La Ley de Vida Silvestre y el Reglamento 6766 ordenan al DRNA actuar de conformidad con la LPAU solamente para resolver solicitudes de personas u organizaciones externas a la agencia que interesen que se designe como vulnerable o en peligro una especie o se proteja un hábitat. No era necesario que el DRNA observara todos los requisitos de la LPAU, porque no estaba enmendando un reglamento, sino que estaba haciendo una designación de especie y hábitat determinada luego de un análisis propio sobre su necesidad, según lo permiten las leyes y reglamentos que le aplican.

---

[25] La objeción del Municipio continuó porque los terrenos que se liberaron no coinciden con las 83 cuerdas que habían identificado para su plan de cierre del Vertedero de Toa Baja, que eran los que interesaban que se excluyeran.

[26] Sentencia del Tribunal de Apelaciones, págs. 2-5; Certiorari CC-2008-808 del Municipio de Toa Baja, págs. 2-5; Certiorari CC-2008-820 de Sabana Seca Land Management, págs. 4-8; Alegato del DRNA, págs. 3-8.

Por los fundamentos discutidos anteriormente, confirmaría la Sentencia del Tribunal de Apelaciones en cuanto a que no tenía jurisdicción para considerar la impugnación de la acción administrativa debido a que la designación de especie y hábitat no era una enmienda al Reglamento 6766, y devolvería el caso al foro apelativo para que atienda los señalamientos del recurso de revisión relacionados con el cumplimiento del DRNA con los criterios establecidos en su Reglamento para la designación.

Liana Fiol Matta
Jueza Asociada