Opinión disidente emitida por el
Juez Asociado Señor Rivera García,
a la cual se une la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Feliberti Cintrón.
Hoy, una mayoría de este Tribunal, mediante su dicta-men, avala una decisión contraria a nuestro estado de derecho. En su curso interpretativo se distancia de las máximas legales que definen la justa causa. En consecuen-cia, pasan por alto que la secuela de su decisión coloca injustificadamente a ciertos empleados en una situación ventajosa con respecto a otros en igual posición. Esto pues, según reconocimos en DACo v. AFSCME, 185 D.P.R. 1 (2012), estos empleados no tienen derecho al aumento trienal. Debemos enfatizar que el recurso de autos pre-senta la misma controversia atendida por esta Curia en DACo v. AFSCME, supra, y que, por lo tanto, sostener la decisión de la Comisión de Relaciones del Trabajo del Servicio Público (Comisión) ratifica un estado de derecho amorfo. En esa ocasión pautamos que el aumento trienal dispuesto en la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184-2004 (3 L.P.R.A. sec. 1461 et seq.) (Ley Núm. 184) no aplica a los empleados cuyo puesto pertenece a una unidad apropiada. Consecuentemente, de-terminamos que un patrono no incurre en una práctica ilí-cita en el trabajo, en conformidad con el Art. 9 de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45-1998 (3 L.P.R.A. secs. 1452a-1452c) *712 (Ley Núm. 45), cuando deniega a estos empleados el au-mento por años de servicio que dispone la Ley Núm. 184 para empleados gerenciales, también conocido como el “au-mento trienal”. Asimismo, interpretamos que al resolver controversias sobre prácticas ilícitas, el análisis incidental de estatutos distintos a la Ley Núm. 45 no le resta juris-dicción a la extinta Comisión.
Por los fundamentos que discutimos a continuación, y porque estoy convencido de que la decisión mayoritaria es desafortunada, disiento.
I
El 16 de diciembre de 2005 la Unión de Servidores Pú-blicos Unidos de Puerto Rico (SPU), que está certificada como representante exclusivo de los empleados de la uni-dad apropiada del Departamento de Asuntos del Consumi-dor (DACo),(1) presentó cargos ante la Comisión alegando que la agencia infringió la Sec. 9.1(a) e (i) del Art. 9 de la Ley Núm. 45 (3 L.P.R.A. sec. 1452a).(2) Particularmente, argüyó que DACo incurrió en prácticas ilícitas al revocar el aumento salarial que dispone el Art. 8, Sec. 8.3(2) de la Ley Núm. 184 (3 L.P.R.A. sec. 1464b(2)) a un empleado, y de-negárselo a otras dos empleadas, en vista de que los pues-tos que estos ocupaban eran parte de la unidad apropiada de dicha agencia.(3) La SPU sostuvo que DACo desalentó *713 mediante sus acciones a los empleados a unirse a cualquier organización sindical, en contravención del Art. 9, Sec. 9.1(i) de la Ley Núm. 45 (3 L.P.R.A. sec. 1452a(i)).(4) Asi-mismo, adujo que esta conducta constituía una práctica ilícita según el Art. 9, Sec. 9.1(a) de ese mismo estatuto, por restringir la decisión de sus empleados a ejercer o no su derecho a la afiliación sindical.
En respuesta a las querellas instadas, DACo expresó que implemento correctamente el Art. 8, Sec. 8.3(3) de la Ley Núm. 184,(5) y que no incurrió en prácticas ilícitas. Asimismo, durante el proceso administrativo, la agencia presentó prueba de las consultas realizadas a la entonces Oficina de Recursos Humanos del Estado Libre Asociado (ORHELA) sobre si debía pagar a los empleados sindicados el aumento trienal que provee la Ley Núm. 184 a emplea-dos gerenciales. Presentó, además, la carta que recibió de ORHELA que afirmaba que los empleados no eran acree-dores del aumento por ser miembros de una unidad apro- *714 piada y por haber un representante exclusivo certificado para representarlos.(6)
Luego de varios trámites procesales, el 26 de octubre de 2010 el oficial examinador de la Comisión emitió su In-forme y Recomendaciones, en el cual aconsejó que se decla-rara “con lugar” la querella contra DACo. Expresó que como los empleados de la unidad apropiada solicitaron el aumento dispuesto en la Ley Núm. 184 cuando aún no se había aprobado un convenio colectivo, estaban cobijados por la Ley Núm. 184 y los reglamentos aplicables. Por con-siguiente, el oficial examinador encontró a la agencia in-cursa en violación al Art. 9, Sec. 9.1(a) de la Ley Núm. 45, y por ello recomendó la imposición de una multa de $1,000. No obstante, aconsejó la desestimación de la alegación de infracción al Art. 9, Sec. 9.1(i) de la Ley Núm. 45.
Por su parte, el 10 de noviembre de 2010 DACo presentó su alegato y solicitó que la Comisión no acogiera las reco-mendaciones del oficial examinador. Empero, el 26 de enero de 2011 la Comisión emitió una Decisión y Orden, en la que resolvió que DACo incurrió en una práctica ilícita a tenor del Art. 9, Sec. 9.1(a) de la Ley Núm. 45. Oportuna-mente, el 15 de febrero de 2011 DACo presentó una moción de reconsideración. Subsiguientemente, el 1 de marzo de 2011 la Comisión emitió una resolución, declarando “no ha lugar” la petición de reconsideración.
Inconforme con ese proceder, DACo incoó un recurso de revisión judicial ante el Tribunal de Apelaciones. Sin embargo, el 29 de junio de 2011 el foro a quo emitió una reso-lución en la que resolvió que DACo incumplió con los tér-minos dispuestos para la notificación. En consecuencia, se declaró sin jurisdicción para atender el recurso instado.
No conteste con tal proceder, DACo acude ante este Tribunal y nos señala los errores siguientes:
*715 Erró el [Tribunal de Apelaciones] al declararse sin jurisdicción para atender en los m[é] ritos el recurso de Revisión Judicial presentado por el DACO, por la alegada notificación tardía a SPU, toda vez que, conforme al Reglamento del Tribunal de Apelaciones el término dispuesto para ello es de cumplimiento estricto, habiendo el DACO acreditado de manera adecuada la existencia de justa causa para tal demora.
Erró el [Tribunal de Apelaciones] al no considerar el carácter novel de la controversia, la falta de certeza y claridad en el estado de derecho actual y la posibilidad real e inminente de que se obtuvieran decisiones incompatibles a la que este Honorable Tribunal pudiera emitir en su momento en el caso Departamento de Asuntos del Consumidor v. Servidores Públi-cos Unidos de Puerto Rico, Caso N[ú]m. CC-2010-0554.
Erró la Comisión al adjudicar la Querella CA-05-112 aplicando a empleados sindicados las disposiciones de la Ley 184 sobre el aumento de retribución por concepto del pago del trienio, por carecer de jurisdicción [la Comisión] para adjudicar esta controversia.
Erró la Comisión al concluir que DACO incurrió en una prác-tica ilícita al amparo de las disposiciones de la Ley 45 al de-negarle a los querellantes como empleados sindicados el au-mento en retribución establecido en el inciso 3 de la Sección 8.3 del Artículo 8 de la Ley 184, 3 L.P.R.A. sec. 1464b, por concepto del pago del trienio.
El 11 de julio de 2012, luego de que el peticionario pre-sentara una segunda moción de reconsideración, expedi-mos el recurso de certiorari. Ambas partes han presentado sus respectivos alegatos. Contando con el beneficio de sus comparecencias, pasemos a resolver.
II
A. La inobservancia de un requisito de cumplimiento estricto conlleva consecuencias jurídicas distintas al in-cumplimiento de un requisito jurisdiccional. De una parte, “cuando se trata de un término de cumplimiento estricto, el foro judicial queda liberado del automatismo que con-lleva el requisito jurisdiccional y puede ‘proveer justicia se-gún lo ameriten las circunstancias’ ”. (Enfasis nuestro). Arriaga v. F.S.E., 145 D.P.R. 122, 131 (1998). Así, la obser- *716 vancia tardía de un término de cumplimiento estricto es permisible si se demuestra una justa causa para no cum-plir con el término en cuestión. Id. Sin embargo, la demora ocurrida debe ser justificada detalladamente y a cabalidad. Arriaga v. F.S.E., supra.
El mecanismo procesal de la desestimación por incum-plimiento con las disposiciones reglamentarias debe ser el último recurso utilizado por los tribunales. Salinas v. S.L.G. Alonso, 160 D.P.R. 647 (2003). Procede la desesti-mación del recurso solo en instancias en que el incumpli-miento provoque un impedimento real y meritorio para que el tribunal intervenga en los méritos del caso. Id. Esto, pues los principios rectores del sistema judicial imponen el deber de que las controversias se atiendan en los méritos y no se desestimen los recursos por defectos de forma o de notificación que no afecten los derechos de las partes. 4 L.P.R.A. Ap. XXII-B, R. 2(3). Igualmente, el Reglamento del Tribunal de Apelaciones dispone que los errores de forma “deberán interpretarse de forma que se reduzcan al mínimo las desestimaciones de los recursos”. 4 L.P.R.A. Ap. XXII-B, R. 12.1. Véanse, además: Hernández v. Espinosa, 145 D.P.R. 248 (1998); Ríos Quiñones v. Adm. Servs. Agrícolas, 140 D.P.R. 868 (1996); Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 773 esc. 3 (1991).
Empero, los tribunales pueden eximir a una parte del requisito de observar fielmente un término de cumpli-miento estricto. Esto ocurre cuando existe una justa causa para la dilación y la parte demuestra al tribunal las bases razonables que tiene para la dilación. Véase Arriaga v. F.S.E., supra.
En el caso de autos, DACo explicó su imposibilidad de acreditar el hecho de la notificación, pues el recurso se in-coó fuera de horas laborables. En todo momento sostuvo que sí notificó dentro del término previsto. No obstante, surge que el 13 de junio de 2011 DACo volvió a notificar personalmente una vez supo que no llegó la primera *717 notificación. Entendemos que en este caso, los derechos de la Unión no se vieron irreversiblemente afectados por el defecto en la notificación.
Junto con lo anterior, ponderamos que en la controver-sia ante nuestra consideración la Comisión decidió que el aumento trienal correspondía a los querellantes y que DACo incurrió en una práctica ilícita al no concederlos. Si se sostiene la decisión de la Comisión como final e inape-lable, se habría permitido una interpretación contraria a los propósitos de la Ley Núm. 184. En consecuencia, DACo estaría obligado a cumplir con el dictamen de la agencia de conceder el aumento trienal a un grupo de empleados que pertenecen a una unidad apropiada, a pagar una multa por cumplir con el mandato legislativo y a publicar un aviso a todos sus empleados a esos efectos.
Todo lo antes expuesto es incompatible e incongruente con nuestra pauta en DACo v. AFSCME, supra. Mantener la decisión de la Comisión crearía un estado de incertidum-bre jurídica sobre qué verdaderamente es lo que procede en derecho. Considerando los argumentos esbozados, aunque en el caso de autos el escrito de revisión no fue notificado oportunamente dentro del término de cumplimiento es-tricto, dicho error se enmendó posteriormente. Asimismo, debemos tener presente el principio cardinal de que las controversias se resuelvan en sus méritos de manera justa y conforme a derecho. Por tal razón, es forzoso colegir que erró el Tribunal de Apelaciones al desestimar el caso de epígrafe y que este debió atender el caso en sus méritos.
B. Por otra parte, DACo aduce nuevamente que la ju-risdicción para dilucidar el caso le corresponde a ORHELA y no a la Comisión.(7) No le asiste la razón. Reiteramos lo *718 establecido en DACo v. AFSCME, supra, donde resolvimos que el análisis incidental de las disposiciones de la Ley Núm. 184 no resta jurisdicción a la Comisión al adjudicar casos sobre prácticas ilícitas.
Recordemos que la Ley Núm. 45 facultó a la Comisión para atender reclamaciones sobre prácticas ilícitas en que haya incurrido la autoridad nominadora o las organizacio-nes sindicales.(8) Depto. Estado v. U.G.T., 173 D.P.R. 93 (2008); Asociación Maestros v. Comisión, 159 D.P.R. 81 (2003). Dos acciones de las agencias que se consideran prácticas ilícitas son:
(a) Intervenir, coartar o restringir a uno (1) o más de sus empleados en relación con su decisión de ejercer o no los dere-chos reconocidos en [esta ley].
(i) Estimular o desalentar a los empleados a unirse a cual-quier organización sindical o a participar en las actividades de la misma mediante discriminación al emplear, despedir, con-ceder permanencia en el empleo o en relación a otros términos o condiciones de trabajo. 3 L.P.R.A. sec. 1452a(a) e (i).
Observamos pues, que la Comisión debía atender toda querella sobre prácticas ilícitas en el trabajo realizadas por una agencia, organización sindical o sus miembros. Como mencionáramos, en el caso de autos se presentó una que-rella en virtud de las disposiciones sobre práctica ilícita. La SPU adujo que DACo desalentó la sindicalización de los empleados querellantes al negar el aumento trienal que *719 dispone la Ley Núm. 184. Al ser esta una imputación de práctica ilícita —que es materia comprendida dentro de las facultades de la Comisión— resulta forzoso colegir que este organismo tenía la facultad para atender la controversia presentada ante su consideración. DACo v. AFSCME, supra.
Ahora bien, en este caso, al igual que en la controversia atendida en DACo v. AFSCME, supra, la Comisión se ex-cedió en el límite de sus poderes al interpretar las disposi-ciones de la Ley Núm. 184 en un sentido palmariamente contrario a la intención del legislador. En consecuencia, resolvemos que mediante ese proceder, la Comisión actuó de forma ultra vires en su decisión como agencia.
Resueltos los planteamientos procesales y de índole ju-risdiccional, procedemos a examinar en conjunto el estado de derecho relacionado con las demás controversias pre-sentadas ante este Tribunal.
C. Como es sabido, la Ley Núm. 184 formuló “normas generales” de retribución aplicables a todas las agencias. Así también, estableció “normas específicas” destinadas únicamente a los empleados no sindicados, gerenciales y aquellos excluidos de la Ley Núm. 45.(9) Específicamente, el Art. 8, Sec. 8.3 de la Ley Núm. 184 expresa:
Las siguientes normas sólo serán aplicables a los empleados no sindicados, gerenciales o empleados excluidos de [la Ley Núm. 45-1998, según enmendada,] que laboran en el servicio público.
(3) Los empleados públicos no sindicados y gerenciales que hayan ocupado un puesto regular durante un período ininte-rrumpido de tres (3) años de servicios, sin haber recibido nin-gún otro aumento de sueldo recibirán un aumento de hasta un cinco por (5%) ciento de su sueldo o su equivalente en tipos intermedios. Para esto, el empleado debe haber provisto servi-cios satisfactorios durante el período de tres (3) años según evidenciado en sus hojas de evaluaciones. La autoridad nomi- *720 nadora enviará una notificación escrita a todo empleado que no satisfaga esta consideración. La notificación incluirá las razones por las cuales no se le concede al empleado el referido aumento, y le advertirá de su derecho de apelar ante la Comi-sión Apelativa. (Énfasis nuestro). 3 L.P.R.A. sec. 1464b.
Al examinar tanto el texto como el historial del referido precepto, se deduce claramente que la intención legislativa fue aprobar una norma específica aplicable única y exclu-sivamente a los empleados no sindicalizados, gerenciales o excluidos de la Ley Núm. 45. En torno a esta distinción, el legislador puntualizó que la Ley Núm. 184
[t]iene las normas retributivas generales que quedan de aplicación a las agencias así como las normas de [sic] retribu-tivas específicas que aplicarán solamente a los empleados no sindicados, gerenciales o excluidas de la Ley 45. De hecho, fuimos bien, bien cuidadosos, señor Presidente, bien cuidado-sos para que ninguna de las disposiciones de esta ley infrin-giera, trastocara, menoscabara, los derechos adquiridos bajo la negociación colectiva a la que tienen derecho ahora los em-pleados públicos bajo la Ley 45 y de hecho, los líderes sindica-les que fueron partícipes de la discusión de este proyecto, así lo reconocen, dieron sus sugerencias, propusieron cambios y se recogieron, de manera de [sic] garantizar, meridianamente claro, que no hay una disposición del Proyecto que vaya a in-ferir, a socavar, menoscabar, o violentar o cualquier convenio colectivo y cualquier derecho adquirido por los trabajadores que están sindicalizados y que negocian colectivamente. (Énfa-sis nuestro). P. de la C. 3844, 7ma Sesión Ordinaria de la Asamblea Legislativa, 16 de julio de 2004, pág. 7.
Como puede observarse, las disposiciones de la Ley Núm. 184 tienen el fin “de diseñar un sistema retributivo compatible con la negociación colectiva que permita man-tener la equidad y justicia al momento de implantar los procesos retributivos, tanto para empleados unionados como para los no unionados, incluyendo a los gerenciales”. (Énfasis nuestro).(10) Esto así, ya que “los empleados no sindicalizados a quienes no les aplican las disposiciones de *721 la Ley Núm. 45 y los empleados gerenciales necesitan igual justicia retributiva que aquellos que se pueden beneficiar de los acuerdos establecidos entre la unión que los repre-senta y el patrono”. DACo v. AFSCME, supra, pág. 24.
ORHELA, dentro de sus funciones ministeriales, emitió la Carta Normativa 1-2005, que posteriormente se convir-tió en el Reglamento Núm. 6939 de 3 de febrero de 2005, intitulado Normas generales sobre retribución conforme a la Ley de la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico. En la parte VII de ese Reglamento se enfatiza que la norma estatuida en la See. 8.3 de la Ley Núm. 184 aplica solamente a los empleados no sindicalizados, gerenciales o empleados excluidos de la Ley Núm. 45, o sea, empleados que no ocupan puestos comprendidos en la unidad apropiada. Además, el Reglamento aclara que la exclusión de los empleados comienza desde el momento cuando se certifica la unidad apropiada para fines de la negociación colectiva y se certifica la organización sindical como repre-sentante exclusiva de estos.(11)
Es preciso reiterar que “la razón legislativa para cir-cunscribir el aumento trienal a estos empleados es que aquellos que pertenecen a la unidad apropiada, a diferen-cia de los excluidos de esta, obtienen sus retribuciones, in-cluso los aumentos de salario, según las estipulaciones acordadas en el convenio colectivo”. DACo v. AFSCME, supra, pág. 26.
Por otra parte, la doctrina de revisión judicial establece que las decisiones administrativas son objeto de deferencia judicial y se presumen correctas. DACo v. AFSCME, supra, pág. 26; IFCO Recycling v. Aut. Desp. Sólidos, 184 D.P.R. 712 (2012). Esta consideración judicial responde a la expe-riencia y al conocimiento especializado atribuible a los or- *722 ganismos gubernamentales. Empero, “[l]as determinacio-nes de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustan-cial que obra en el expediente administrativo. [No obs-tante, las] conclusiones de derecho serán revisables en todos sus aspectos por el tribunal”.(12) A tales efectos, las conclu-siones de derecho se sostendrán cuando se ajusten al man-dato legislativo. DACo v. AFSCME, supra.
De esta forma, cuando el foro administrativo abusa de su discreción al emitir una decisión que resulta ilegal, irra-zonable o arbitraria, es necesaria la intervención judicial para hacer valer el mandato legislativo. Mun. de San Juan v. CRIM, 178 D.P.R. 163 (2010).
En el caso de autos, la Comisión interpretó el alcance de la Ley Núm. 184 en manifiesta contravención al regla-mento de ORHELA y al propio mandato legislativo. Ambos preceptos legales excluyen a los empleados sindicados y los cobijados por la Ley Núm. 45 del aumento trienal. Al inter-pretar lo contrario, la decisión de la Comisión es ilegal y arbitraria. DACo v. AFSCME, supra. Según hemos obser-vado, la Ley Núm. 184 armoniza el sistema de administra-ción de recursos humanos con la negociación colectiva y sindicalización de los servidores públicos.
Las directrices establecidas por ORHELA a través de sus reglamentos están dirigidas a todas las agencias y tie-nen la misma fuerza vinculante que la ley.(13) La Comisión no debió imponer su propio criterio sobre el alcance de la Ley Núm. 184. Esto, debido a que DACo cumplió con las pautas establecidas en la Ley Núm. 184 y el citado regla-mento de ORHELA.
Acorde con lo intimado, es forzoso colegir que DACo no incurrió en práctica ilícita alguna. Los empleados en cues-tión pertenecían a una unidad apropiada. Por lo tanto, no *723 podemos concluir que una autoridad nominadora que de-niega dicho aumento a estos empleados desalienta su sindicalización. “Ello, pues el hecho de que se sindicalicen o no, no hará a los empleados acreedores del aumento en cuestión”. DACo v. AFSCME, supra, pág. 29. Dicho au-mento está dirigido a una población específica que, por las características de su empleo, se diferencia, entre otras co-sas, por no poder recibir los beneficios de una negociación colectiva.
Según hemos pautado, el aumento que la Ley Núm. 184 concede a los empleados gerenciales y a los excluidos de la Ley Núm. 45, es el fruto del reconocimiento de la limita-ción de estos empleados para luchar por mejores condicio-nes laborales cara a cara con el patrono. DACo v. AFSCME, supra. Consecuentemente, colegimos que la Comisión erró al determinar que los empleados querellan-tes eran acreedores de dicho aumento y concluir que DACo incurrió en prácticas ilícitas al denegarle a estos dichos beneficios.
III
Por los fundamentos expuestos, revocaríamos la resolu-ción del Tribunal de Apelaciones mediante la cual se des-estimó el escrito de revisión presentado por DACo. Ello así, ya que entendemos que el término del requisito de la noti-ficación es de estricto cumplimiento y en este caso DACo explicó las razones por las que no se pudo acreditar el cum-plimiento dentro de ese término; enterado de la falta, vol-vió a notificar. Revocaríamos, además, la orden de la Co-misión por apartarse de nuestro ordenamiento jurídico, pues el aumento trienal no corresponde a los empleados querellantes porque no forman parte del grupo al que van dirigidas las “normas específicas” de la See. 8.3 de la Ley Núm. 184. No obstante, reafirmamos que la Comisión te-nía jurisdicción para atender las querellas que fueron pre- *724 sentadas alegando el uso de una práctica ilícita en el ám-bito obrero-patronal.
Además, la actuación judicial mayoritaria es insosteni-ble ante el diáfano texto de la Ley Núm. 184. Más aún, se derrota la intención legislativa bajo el pretexto de que DACo no acreditó justa causa para la tardía notificación del recurso. Lamentablemente, a un requisito de estricto cumplimiento la mayoría le confiere más peso que a los postulados de la referida legislación.
Por otro lado, ante la realidad fiscal que experimentan los fondos públicos en Puerto Rico, avalar la concesión de este aumento trienal como lo hace la mayoría, constituye una acción que incide sobre los principios de sana adminis-tración pública. Por las razones enunciadas, disiento respetuosamente.

 Servidores Públicos Unidos de Puerto Rico (SPU) es una Unión certificada como representante exclusivo de los empleados de esa unidad apropiada, a tenor con la See. 8.3(3) de la Ley Núm. 184-2004 (3 L.P.R.A. sec. 1464b(3)) (Ley Núm. 184) desde el 4 de mayo de 2005. Esta fue la Certificación Núm. 052 de la Comisión de Relaciones del Trabajo del Servicio Público (Comisión). Véase Anejo IV del Apéndice de la Petición de certiorari, pág. 172. En agosto de 2007, entre el Departamento de Asuntos del Consumidor (DACo) y SPU se firmó el Convenio Colectivo. Véase Alegato de la recurrida, pág. 8.

 La Comisión emitió y notificó una Querella y Aviso de Audiencia en el caso CA-05-112 el 29 de agosto de 2006.

 Específicamente, se trataba de la revocación de un aumento por años de sei*vicio concedido el 3 de junio de 2005 al Sr. Edgard Muñoz Díaz, así como de la denegatoria de aumentos a la Sra. Nilda Aponte Díaz y la Sra. Carmen Mercado *713 González, por ocupar puestos que forman parte de la unidad apropiada de DACo. Véanse las misivas que DACo envió a los querellantes el 3 de noviembre de 2005, Apéndice de la Petición de certiorari, págs. 40-43. La agencia fundamentó su proce-der en que el aumento trienal de la Ley Núm. 184 se destinó a los empleados públicos no sindicados y gerenciales. Asimismo, citó la Sec. VII de la Carta Normativa Núm. 1-2005 de 25 de junio de 2005 de la entonces Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico (ORHELA), que indica que una vez la Comi-sión certifica una unidad apropiada para la negociación colectiva y certifica una organización sindical como representante exclusivo de los empleados, estos quedan excluidos de los beneficios dispuestos para empleados cuyos puestos no pertenecen a una unidad apropiada. Id.

 Véase Informe y Recomendaciones del Oficial Examinador, Apéndice de la Petición de certiorari, pág. 55.

 Este inciso (3) del Art. 8 de la Ley Núm. 184 dispone lo siguiente:
“Los empleados públicos no sindicados y gerenciales que hayan ocupado un puesto regular durante un período ininterrumpido de tres (3) años de servicios, sin haber recibido ningún otro aumento de sueldo recibirán un aumento de hasta un cinco por (5%) ciento de su sueldo o su equivalente en tipos intermedios: Para esto, el empleado debe haber provisto servicios satisfactorios durante el período de tres (3) años según evidenciado en sus hojas de evaluaciones. La autoridad nominadora en-viará una notificación escrita a todo empleado que no satisfaga esta consideración. La notificación incluirá las razones por las cuales no se le concede al empleado el referido aumento, y le advertirá de su derecho de apelar ante la Comisión Apelativa”. 3 L.P.R.A. sec. 1464b(3).

 Véanse las determinaciones de hecho del informe y las recomendaciones del oficial examinador, Apéndice de la Petición de certiorari, pág. 62.

 El Plan de Reorganización Núm. 2, aprobado el 26 de julio de 2010, fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servi-cio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP), creando así lo que ahora se conoce como la Comisión Apelativa del Servicio Público (CASP). CASP actúa como un organismo cuasijudicial en la Rama Ejecutiva especializado en asuntos obrero-patronales y del principio de mérito, atendiendo ca- *718 sos laborales, de querellas y de administración de recursos humanos tanto para los empleados que negocian sus condiciones de trabajo al amparo de la Ley Núm. 45-1998 (3 L.P.R.A. sec. 1451 et seq.), como para los empleados públicos cubiertos por la Ley Núm. 184, supra. Igualmente, CASP atiende aquellos casos al amparo de la Ley Núm. 333-2004, según enmendada, 29 L.P.R.A. sec. 100 et seq., conocida como la Carta de Derechos de los Empleados Miembros de una Organización Laboral.

 Véase 3 L.P.R.A. sec. 1452t(a) (ed. 2006), que facultaba a la Comisión a
“(a) Interpretar, aplicar y hacer cumplir las disposiciones de este capítulo en todo lo relativo a los procesos de organización, certificación, descertificación de orga-nizaciones sindicales; en los procedimientos relacionados con la conciliación y arbi-traje de negociaciones de convenios colectivos, en los procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que este capítulo le delegue alguna actuación particular”.

 3 L.P.R.A. secs. 1464a y 1464b.

 Véase el Informe en torno al Sustitutivo [del] P. de la C. 3844, 15 de julio de 2004, pág. 13.

 Normas generales sobre retribución conforme a la Ley de la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 6939 del Departamento de Estado, según enmendado, 3 de febrero de 2005, pág. 8.

 3 L.P.R.A. sec. 2175.

 D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá. Ed. Forum, 2001, pág. 26.